## LIST OF PLEADINGS

1.  Petition For An Ex Parte, Temporary, Preliminary Injunction And Permanent Injunction Prior To This Matter Coming On For Full Hearing Before Said Court

2.  Temporary Restraining Order

3.  Motion To Dismiss

4.  Amended Complaint And Petition For Preliminary Injunction

5.  Motion For Preliminary Injunction And Appointment Of A Special Receiver

6.  Objection To Motion For Preliminary Injunction And Appointment Of A Special Receiver

7.  Defendants' Memorandum In Response to Plaintiffs' Motion For Preliminary Injunction And Appointment Of Special Receiver

8.  Plaintiff's Response To Motion To Dismiss

9.  Answer And Counterclaim

10. Reply To Counterclaim

11. Motion For Issuance Of Warrant For Boris Bannai

12. Order Regarding Issuance Of Warrant

# EXHIBIT A

*11/24/04*

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA.

Jacob Binson and Itzhak Bannai,
                                    Plaintiffs                    04-C-196

Vs.

American Alloys, Inc.;
Industrial Development, LLC;
Highlanders Alloys, LLC,
Global Industrial Projects, LLC,
Boris Bannai, individually and as a stockholder
And/or officer in the foregoing corporations, and
All Crane Rental Corporation, an Ohio Corporation,
Aggreko, Inc., a Louisiana Corporation,
Air Equipment Sales and Service, Inc., a
Kentucky Corporation,

### PETITION FOR AN EX PARTE, TEMPORARY, PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION PRIOR TO THIS MATTER COMING ON FOR FULL HEARING BEFORE SAID COURT

    1.  Plaintiffs are the second parties to a contract dated September 27, 2004, by

and between said plaintiffs and the named defendant, Boris Bannai. A copy of said

contract is marked "Exhibit A" and is attached hereto and incorporated herein by

reference.

    2.  The plaintiff, Jacob Binson, has delivered unto the defendant, Boris Bannai,

or one of the legal entities owned in whole or in part by the said Boris Bannai, the

amount of $2,500,000.00 in United States currency.

    3.  The plaintiff, Jacob Binson, is a citizen of the United States of America and a

resident of New Jersey. The named defendant, Boris Bannai, is a citizen of the nation

of Israel and is present in the United States on a business visa.

CHAEL SHAW, L.C.
TORNEYS AT LAW
NT PLEASANT, W.VA.

4. The said Boris Bannai has refused to perform his obligations and promises pursuant to said contract and has refused to deliver in whole or in part unto the plaintiff, Jacob Binson, the transfer of the shares of stock and/or ownership in a variety of the legal entities set out in said "Exhibit A". Also, the named defendant, Boris Bannai, has refused and failed to comply with numerous other of his obligations pursuant to said "Exhibit A". Pursuant to the terms of the agreement, Jacob Binson, was to become the owner of 20% of Highlanders Alloys, LLC, in addition to other related entities. The defendant, Boris Bannai, may have created or acquired other entities utilizing the assets of Highlanders Alloys, LLC. Jacob Binson should be the owner of 20% of the shares of those entities. These entities include: Industrial Development, LLC, and Global Industrial Projects, LLC.

5. The said Boris Bannai, without the benefit of counsel, composed, drafted and prepared said "Exhibit A", which is executed by all of the parties.

6. On the 25th day of October, 2004, the plaintiff, Jacob Binson, demanded that the said Boris Bannai perform his obligations pursuant to said "Exhibit A" .

7. The defendants, All Crane Rental Corp., an Ohio Corporation, Aggreko, Inc., a Louisiana Corporation, and Air Equipment Sales and Service, Inc., a Kentucky Corporation, are creditors of record of one or more of the other named defendants.

8. In addition, the plaintiff, Jacob Binson, has invested much personal time, expenses and other monetary contributions unto the said Boris Banni and said corporations.

9. Prior to the execution of said "Exhibit A" , the defendant, Boris Bannai, had formed Industrial Development, LLC, and Global Industrial Projects, LLC.

CHAEL SHAW, L.C.
TTORNEYS AT LAW
NT PLEASANT, W. VA.

10.  The plaintiff, Jacob Binson, has reason to believe, and does believe, that one or more of said corporations, and possibly unnamed entities or persons, are in the process of purchasing the claims of the creditors named above and other creditors at a discount, and having said claims assigned to them, making them the creditors of the company or companies into which the money and investment of the said plaintiff, Jacob Binson, has been transferred.

11.  Also attached hereto and incorporated herein by reference and marked "Exhibit B" is a letter dated October 29, 2004, signed by the said defendant, Boris Bannai, to Jacob Binson wherein he, in effect, refuses to comply with is obligations for the reason that he says that the said plaintiff, Jacob Binson, is in default in payment of his investments.

12.  With regard to the foregoing paragraph number 11 above, the plaintiff, Jacob Binson, had deposited with is attorney all of the balance of the monies required by him to pay pursuant to the terms of said "Exhibit A".  However, his attorney, Jay Lazerowitz, quite properly, refused to deliver the balance thereof to the said Boris Bannai, for the reason that the said Boris Bannai refused to acknowledge, in writing, the delivery and transfer of said money, the receipt thereof, as well as acknowledging, in writing, the receipt of monies already transferred from the plaintiff, Jacob Binson, to the said defendant, Boris Bannai.

13.  This Court has earlier appointed a Special Commissioner to prioritize numerous creditors' claims of record against one or more of the named defendants. This appointment was made by an order of this Court in the cause of ALL CRANE RENTAL CORP., an Ohio Corporation, AGGREKO, INC., a Louisiana Corporation,

CHAEL SHAW, L.C.
TTORNEYS AT LAW
NT PLEASANT, W. VA.

and AIR EQUIPMENT SALES AND SERVICE, INC., a Kentucky Corporation,

Plaintiffs, vs. HIGHLANDERS ALLOYS, LLC, A West Virginia limited liability company,

ET AL, Defendants, CIVIL ACTION NO. 02-C-159-N. The Supplemental

Commissioner's Priority Report by said Special Commissioner is marked "Exhibit C"

and attached hereto and incorporated herein by reference. The time within which to

object to the recommendations of the said "Exhibit C" has expired and no objections

were filed.

14. As can be seen clearly by said "Exhibit C", the finances of Highlanders

Alloys, LLC, and the other named defendants, excluding the creditors' claims, are all

very intertwined, complicated, murky, and extremely difficult to understand, and create

a complex set of legal issues that need to be addressed and resolved in a Court of law.

15. Pursuant to West Virginia Rulesof Civil Procedure, Rule No. 65, a copy of

which is attached hereto, incorporated herein by reference and marked "Exhibit D",

your plaintiffs have met all of the conditions required by this rule and all of the laws of

the State of West Virginia for an ex parte temporary restraining order without written or

oral notice, by the attached affidavit, marked "Exhibit E" and incorporated hereby by

reference.

16. Further, the undersigned attorney for the applicant has prepared and

executed a certification to this Court, in writing, supporting the efforts which have been

made to give notice and the reasons supporting the claim that notice should not be

required as of the date of this filing.

17. As mentioned above, the purpose of this petition is to obtain a temporary

restraining order and to apply for a preliminary injunction pursuant to law, and, as soon

CHAEL SHAW, L.C.
TTORNEYS AT LAW
NT PLEASANT, W. VA.

as possible, to initiate and complete a full investigation of the financial affairs of the parties hereto, with the exception of All Crane Rental Corp., Aggreko, Inc., and Air Equipment Sales and Service, Inc.

18.   The plaintiffs aver and allege and submit to the Court that the fact situation set out above will be best addressed by this Court appointing a Special Commissioner, Receiver, Financial Advisor, or a combination thereof, and immediately freeze the assets of the defendants named above, excluding the named creditors.

19.   Upon investigation, after the delivery of said monies, the plaintiff, Jacob Binson, discovered that the said Highlanders Alloys, LLC, is no longer an active corporation in the State of West Virginia. The said plaintiff, Jacob Binson, relied upon the representations of the said defendant, Boris Bannai, that Highlanders Alloys, LLC, was an active legal entity and acted thereon to his detriment.

20.   The plaintiffs herein will suffer immediate and irreparable injury, loss or damage before the adverse parties hereto, or their attorneys, can be heard in opposition, or of which is set out herein.

21.   Pursuant to law, the applicant's/plaintiff's attorney has certified, in writing, the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required, see attached "Exhibit E", attched hereto and incorporated herein by reference.

WHEREFORE, your plaintiffs, pray that:

(a)  This Court enter a temporary restraining order forthwith and set a date for a full hearing for the prayer of the plaintiffs seeking a preliminary injunction.

CHAEL SHAW, L.C.
TTORNEYS AT LAW
NT PLEASANT, W. VA.

(b)   That the Court appoint a Special Commissioner, Receiver, Financial Advisor, or a combination thereof, and to begin an immediate investigation and accounting of the disbursement of funds received by any of the named defendants, excluding the creditors named above, of funds received from the plaintiff, Jacob Binson, personally, and/or legal entities owned in whole or in part by the said Jacob Binson.

(c)   That this Court, of its own motion or upon the motion of a designated agent of the Court, freeze all of the assets of the above named companies, with the exception of the named creditors.

(d)   That this Court grant unto the plaintiffs such other, further and general relief as the plaintiffs may ask or the Court deem appropriate.

(e)   Frankly, your plaintiffs are requesting that this Court order an investigation as to the whereabouts of the $2,500,000.00 as invested by the plaintiff, Jacob Binson, as set out herein.  For example, a substantial amount of money was transferred by the plaintiff, Jacob Binson, to the said Boris Bannai directly and to legal entities owned in whole or in part by the said Boris Bannai both inside and outside of the State of West Virginia and the United States of America, such as a significant amount which was transferred at the request of the said defendant, Boris Bannai, to a legal entity in South Africa and Cypress as part of the payment required by the said Jacob Binson unto the said Boris Bannai as provided in "Exhibit A" above.

Dated this the 24th day of November 2004.

JACOB BINSON,
BY HIS ATTORNEY

CHAEL SHAW, L.C.
TTORNEYS AT LAW
NT PLEASANT. W. VA.

R. Michael Shaw
Shaw & Tatterson, L. C.
Attorneys for Plaintiffs
610 Main Street
Point Pleasant, WV 25550

STATE OF WEST VIRGINIA,

COUNTY OF MASON, TO-WIT:

___Jacob Binson_____, named in the foregoing writing,

being first duly sworn, deposes and says that the facts and allegations therein

contained are true, except so far as they are therein stated to be on information, and

that so far as they are therein stated to be on information, said party believes them to

be true.

Taken, subscribed and sworn to before me this the ___24th___ day of

November_____, 2004.

My commission expires: _Feb. 6, 2011_____.

Notary Public.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
BARBARA ANN BROWN
92 WARWICK RD.
POINT PLEASANT, WV 25550
My commission expires February 6, 2011

ICHAEL SHAW, L.C.
TTORNEYS AT LAW
INT PLEASANT, W. VA.

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA

**JACOB BINSON AND ITZHAK BANNAI**
      **Plainitffs,**

**VS.**
                        **Case No.** $04-C-196$

**AMERICAN ALLOYS, INC.;**
**INDUSTRIAL DEVELOPMENT, LLC;**
**HIGHLANDERS ALLOYS, LLC,**
**GLOBAL INDUSTRIAL PROJECTS, LLC,**
**BORIS BANNAI, INDIVIDUALLY AND AS A STOCKHOLDER**
**AND/OR OFFICER IN THE FOREGOING CORPORATIONS, AND**
**ALL CRANE RENTAL CORPORATION, AN OHIO CORPORATION,**
**AGGREKO, INC., A LOUISIANA CORPORATION,**
**AIR EQUIPMENT SALES AND SERVICE, INC., A**
**KENTUCKY CORPORATION.**
          **Defendants.**

### TEMPORARY RESTRAINING ORDER

This day came the Plaintiffs and filed with the Court a Petition for an Ex Parte, Temporary, Preliminary Injunction and Permanent Injunction pursuant to Rule 65 of the West Virginia Rules of Civil Procedure. Based on the pleadings, the Court finds as follows:

    1.    It clearly appears from the verified complaint and affidavit that immediate and irreparable injury, loss, or damage will result to the Plaintiff before the Defendant can be heard in opposition.

    2.    Plaintiff's attorney has certified in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

    3.    It clearly appears that Plaintiffs have invested $2,500,000.00 with Boris Bannai, Highlanders LLC, and other named defendants and other legal entities owned in whole or in part by the said Boris Bannai and that if the pleadings are

MICHAEL SHAW, L.C.
ATTORNEYS AT LAW
POINT PLEASANT, W. VA.

proven to be true, issuing this Temporary Restraining Order, without notice, is the only way to protect said funds. This constitutes an irreparable injury because it appears that if this Temporary Restraining Order is not granted the money will be gone and Plaintiffs will have no recourse.

Base on the above is ORDERED as follows:

1.    The relief prayed for in Plaintffs' Petition Temporary Restraining Order is granted.

2.    _Bradley Layne_ is hereby appointed as Special Commissioner, Receiver, and Financial Adviser, and shall begin an immediate investigation and accounting of the receipt and disbursement of funds received by any of the named defendants of funds received from the plaintiff, Jacob Binson, personally, and/or legal entities owned in whole or in part by the said Jacob Binson, excepting the above named creditors who are not owned in whole or in part by Boris Bannai.

3.    All assets of Boris Bannai, Highlanders LLC, and other named defendants and other legal entities owned in whole or in part by the said Boris Bannai, are hereby ordered frozen with the exception of routine payroll expenditures to employees, and normal day to day operating expenses.

4.    Pursuant to Rule 65(c) of the West Virginia Rules of Civil Procedure, Plaintiffs are required to give security in the amount of $ 50,000 ⁰⁰ to the Circuit Clerk of Mason County, West Virginia.

5.    This Order shall expire by its own terms ten days after its entry, or upon further Order of the Court.

MICHAEL SHAW, L.C.
ATTORNEYS AT LAW
POINT PLEASANT, W. Va.

6.      The pending Motion for a Preliminary Injunction shall be heard on the

_10th_ day of _____, 2004, in the Circuit Court of Mason County, West

Virginia, at _9:30_ _a_.m.

7.      The Plaintiffs hereto shall forthwith serve notice upon all of the other

Defendants and affected parties of this Order and of the Petition for Preliminary

Injunction and the hearing time and date set herein.

ENTER this the _24th_ day of _____, 2004, at the hour of

_9:30_ _a_.m.

_____
DAVID W. NIBERT, JUDGE

Presented by:

_____
R. Michael Shaw (WV# 3354)
SHAW & TATTERSON, L.C.
P.O. Box 3
610 Main Street
Pt. Pleasant, WV 25550
(304) 675-2669

TRUE COPY TESTE _Bill Withers plk_
MASON COUNTY CIRCUIT CLERK

MICHAEL SHAW, L.C.
ATTORNEYS AT LAW
POINT PLEASANT, W. VA.

## IN UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### At Huntington

JACOB BINSON and ITZHAK BANNAI,

Plaintiffs,

vs.                                                Case No.  3:04-1266

AMERICAN ALLOYS, INC.,
INDUSTRIAL DEVELOPMENT, LLC,
HIGHLANDERS ALLOYS, LLC,
GLOBAL INDUSTRIAL PROJECTS, LLC,
BORIS BANNAI, individually and as a stockholder
and/or officer in the foregoing corporations, and
ALL CRANE RENTAL CORPORATION, an Ohio Corporation,
AGGREKO, INC., a Louisiana Corporation,
AIR EQUIPMENT SALES AND SERVICE, INC., a
Kentucky Corporation,

Defendants.

### MOTION TO DISMISS

COME NOW Defendants, Boris Bannai, Highlanders Alloys, LLC, Industrial

Development, LLC and Global Industrial Projects, LLC, by counsel, Mark A. Ferguson and the

law firm of Sprouse & Ferguson, PLLC, and file this Motion to Dismiss the Petition filed by

Plaintiffs, Jacob Binson and Itzhak Bannai, and state as follows:

1.  The Petition must be dismissed for lack of personal jurisdiction, pursuant to Rule

12(b)(2) of the Federal Rules of Civil Procedure.

2.  The Petition must be dismissed for lack of proper venue, pursuant to Rule 12(b)(3)

of the Federal Rules of Civil Procedure.

3. The Petition must be dismissed due to insufficiency of process, pursuant to Rule 12(b)(4) of the Federal Rules of Civil Procedure.

4. The Petition must be dismissed due to insufficiency of service of process, pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.

5. Plaintiffs's Petition fails to state a claim against any of Defendants upon which relief can be granted, and thus must be dismissed pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.

In support of this Motion Defendants have also filed a separate Memorandum of Law.

WHEREFORE, Defendants Boris Bannai, Highlanders Alloys, LLC, Industrial Development, LLC and Global Industrial Projects, LLC, move this Court to dismiss the Petition of Plaintiffs, with prejudice, and that Defendants be awarded costs and attorneys fees with regard thereto together with such other relief as the Court may deem proper.

BORIS BANNAI,
HIGHLANDERS ALLOYS, LLC,
INDUSTRIAL DEVELOPMENT, LLC,
GLOBAL INDUSTRIAL PROJECTS, LLC

By Counsel,

Mark A. Ferguson
SPROUSE & FERGUSON, PLLC
230 Capitol Street, Suite 300
Charleston, West Virginia 25301
(304) 342-9100
WV Bar #1182
Counsel for Defendants

2

## IN UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### At Huntington

JACOB BINSON and ITZHAK BANNAI,

Plaintiffs,

vs.                                                          Case No. 3:04-1266

AMERICAN ALLOYS, INC.,
INDUSTRIAL DEVELOPMENT, LLC,
HIGHLANDERS ALLOYS, LLC,
GLOBAL INDUSTRIAL PROJECTS, LLC,
BORIS BANNAI, individually and as a stockholder
and/or officer in the foregoing corporations, and
ALL CRANE RENTAL CORPORATION, an Ohio Corporation,
AGGREKO, INC., a Louisiana Corporation,
AIR EQUIPMENT SALES AND SERVICE, INC., a
Kentucky Corporation,

Defendants.

### MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS

COME NOW Defendants, Boris Bannai, Highlanders Alloys, LLC, Industrial Development,

LLC and Global Industrial Projects, LLC by counsel, Mark A. Ferguson and the law firm of Sprouse

& Ferguson, PLLC, and file this Memorandum in Support of Motion to Dismiss Petition filed by

Plaintiffs, as removed from the Mason County Circuit Court to United States District Court for the

Southern District of West Virginia.

## BACKGROUND FACTS

The Petition is an attempt by Plaintiff Jacob Binson to collect funds from Defendants allegedly due with regard to investments made by Binson with Boris Bannai ("Bannai") a co-Defendant, under the terms of a Memorandum of Understanding ("Memorandum"), attached as Exhibit A to the initial Petition, as filed in the Circuit Court of Mason County, West Virginia. Following filing of this Petition on November 24, 2004, the Circuit Court of Mason County, West Virginia granted an ex parte temporary restraining order, a copy of which is attached to the Notice of Removal as filed with this Court. Thereafter, Defendants filed Notice of Removal to remove this action to the United States District Court for the Southern District of West Virginia. The restraining order expired pursuant to its own terms on December 4, 2004.

As expressly stated in the Petition, and as shown in the supporting exhibits, including the Memorandum, this is a simple action for breach of contract and to collect an alleged debt from Bannai, the individual who contracted with Plaintiffs. The initial Petition named various other defendants, including the three limited liability companies which have joined in this Motion to Dismiss. In addition, Bannai, an individual and citizen of the county of Israel, was named as Defendant. Bannai is the sole manager and member (directly or indirectly) of each of Highlanders Alloys, LLC ("Highlanders"), Industrial Development, LLC ("Industrial") and Global Industrial Projects, LLC ("Global").

For reasons unclear to Defendants, the initial Petition also named American Alloys, Inc., All Crane Rental Corporation, Aggreko, Inc., and Air Equipment Sales and Service, Inc. American Alloys, Inc. is a bankrupt corporation that previously owned the alloy plant now owned by Highlanders, and which sold the plant to Highlanders in 2001, pursuant to sale as approved by the

2

United States Bankruptcy Court for the Southern District of West Virginia. Thus, American Alloys, Inc. would appear to have no involvement or relationship with this action at all.

All Crane Rental Corporation, Aggreko, Inc. and Air Equipment Sales and Service, Inc. are three mechanics lien creditors of Highlanders who filed a mechanics lien enforcement action in the Circuit Court of Mason County, West Virginia. Thus, they would also appear to have no involvement in this dispute between Bannai and Binson, and, in fact, no allegations or claims are asserted against any of American Alloys, Inc., All Crane Rental Corporation, Inc., Aggreko, Inc. or Air Equipment Sales and Service, Inc. Therefore, it appears that these are only nominal parties with no real interest or involvement in the controversy.

## DISCUSSION

At heart, this action claims breach of contract based upon the written Memorandum entered into between Binson, Itzhak Bannai and Boris Bannai and seeks only monetary damages. None of the limited liability companies named as Defendants are parties to any agreement, undertaking or transaction with Plaintiffs.

1.    Failure to State Claim Against Highlanders, Industrial and Global. As an initial matter, this action should be dismissed with regard to Highlanders, Industrial, and Global, in that they are not parties to any contact with Plaintiffs, and have no contractual or other relationship or involvement with Plaintiffs. Plaintiffs cannot assert any claim against these three entities. If any alleged breach of contract occurred, as asserted by Plaintiffs, their claims are solely against Bannai, who is only the signatory to the Memorandum.

2.    Failure to State Cause of Action for Injunctive Relief. It is clearly appears from the face of the pleadings and the supporting documents that this is a case at law for breach of contract

3

and recovery of monetary damages. Therefore, it has been improperly plead as a petition for injunctive relief, and fails to state a claim for such injunctive equitable relief. By its very nature and definition, injunctive relief is extraordinary in nature and is an equitable remedy. It should only be available when adequate remedy at law, i.e., monetary damages, are inadequate or unavailable. See, Keesecker v. Bird, 490 S.E.2nd 754 (W.Va. 1997). The very essence of this case is the recovery of money.

Therefore, by definition, this cannot be an equitable injunctive action. Moreover, no factual basis has been asserted in the Petition of any extraordinary grounds in support of any injunctive relief. Based on this Petition, any creditor would be able to seek extraordinary injunctive relief, including ex parte temporary restraining order, such as issued in this case, upon no showing other than their "fear" that they would not get their money back. This is no different from any other creditor, and thus there would be no point for any creditor to bring a standard breach of contract action at law if such extraordinary remedies were available.

This matter should have been filed in the ordinary course of civil litigation with a complaint and summons served against Bannai, as the sole party in contact with Plaintiffs, and the party against whom alleged claims of Plaintiffs must be directed. Similarly, the request for appointment of special commissioner or receiver to pursue and track any monetary funds is improperly requested and inappropriate. The information that Plaintiffs desire can be obtained through the normal course of routine discovery under the Rules of Civil Procedure. Thus, there is no basis for extraordinary relief of the type requested by Plaintiffs, and this matter should thus be dismissed with direction that Plaintiffs replead the matter as an ordinary civil complaint in the normal course of civil litigation, asserting any claims against Bannai, as the party in contract with Plaintiffs.

4

Moreover, the additional parties, including Highlanders, Industrial, and Global, are not parties to this agreement and should not be part of the litigation controversy. Of course, in the event future discovery or other factors establish a basis for any actual claim against these entities they could be added as third-party defendants or as additional defendants. However, there is no basis to support their inclusion in the original action.

3.     Petition Must be Dismissed With Respect to Bannai for Lack of Personal Jurisdiction and Improper Venue. As noted above, Bannai is the only party in contract with Plaintiffs, and should be the only proper defendant to this action. In this regard, Bannai is a citizen of Israel, along with one of the two plaintiffs. In addition, it is Defendants contention that this contract was entered into in Israel and primarily deals with ownership and investments in companies and entities outside of the United States.

Therefore, the proper venue and forum for this action should be in Israel, not in State or Federal Court in West Virginia. While Bannai may have certain contacts with the State of West Virginia, they do not relate to the contract which is the subject of this action, and litigation concerning this contract should proceed only in the Israeli courts. Therefore, for both reasons of jurisdiction and venue, this action should be dismissed and should proceed, if at all, in the courts of Israel.

## CONCLUSION

Therefore, Defendants Bannai, Highlanders, Industrial, and Global respectfully request that this Court dismiss the Petition, as removed from the Circuit Court of Mason County, West Virginia, for failure to state any claim of action against these limited liability company defendants and for failure to state any basis to support injunctive equitable relief as requested in the Petition. Instead,

this action should only proceed, if at all, as a breach of contact action at law between Plaintiffs and

Bannai, upon filing of complaint and proper service of process.

Respectfully Submitted,

BORIS BANNAI,
HIGHLANDERS ALLOYS, LLC,
INDUSTRIAL DEVELOPMENT, LLC,
GLOBAL INDUSTRIAL PROJECTS, LLC

By Counsel

Mark A. Ferguson
Sprouse & Ferguson, PLLC
230 Capitol Street, Suite 300
Charleston, West Virginia 25301
(304) 342-9100
WV Bar No. 1182

Counsel for Boris Bannai,
Highlanders Alloys, LLC,
Industrial Development, LLC,
Global Industrial Projects, LLC

6

IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

At Huntington

JACOB BINSON and ITZHAK BANNAI,

Plaintiffs,

vs.                                                              Case No. 3:04-1266

AMERICAN ALLOYS, INC.,
INDUSTRIAL DEVELOPMENT, LLC,
HIGHLANDERS ALLOYS, LLC,
GLOBAL INDUSTRIAL PROJECTS, LLC,
BORIS BANNAI, individually and as a stockholder
and/or officer in the foregoing corporations, and
ALL CRANE RENTAL CORPORATION, an Ohio Corporation,
AGGREKO, INC., a Louisiana Corporation,
AIR EQUIPMENT SALES AND SERVICE, INC., a
Kentucky Corporation,

Defendants.

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **MOTION TO DISMISS** and

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** was served upon counsel for

Plaintiff, as set forth below, by depositing a true copy thereof, postage prepaid, in the United States

mail, this 14th day of December, 2004.

> R. Michael Shaw, Esquire
> Shaw & Tatterson, L.C.
> 610 Main Street
> Point Pleasant, West Virginia 25550

Mark A. Ferguson
Sprouse & Ferguson, PLLC
230 Capitol Street, Suite 300
Charleston, West Virginia 25301
(304) 342-9100
WV Bar No. 1182

Counsel for Boris Bannai,
Highlanders Alloys, LLC,
Industrial Development, LLC,
Global Industrial Projects, LLC

2

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA.

**Jacob Binson and Itzhak Bannai,**
**Plaintiffs,**

vs.                                                      **Civil Action No. 04-C-196**

**American Alloys, Inc.;**
**Industrial Development, LLC;**
**Highlanders Alloys, LLC,**
**Global Industrial Projects, LLC,**
**Boris Bannai, individually and as a stockholder**
**And/or officer in the foregoing corporations, and**
**All Crane Rental Corporation, an Ohio Corporation,**
**Aggreko, Inc., a Louisiana Corporation,**
**Air Equipment Sales and Service, Inc., a**
**Kentucky Corporation.**
**Defendants.**

### AMENDED COMPLAINT AND
### PETITION FOR PRELIMINARY INJUNCTION

1.  Plaintiffs are the second parties to a contract dated September 27, 2004, by

and between said plaintiffs and the named defendant, Boris Bannai. A copy of said

contract is marked "Exhibit A" and is attached hereto and incorporated herein by

reference.

2.  The plaintiff, Jacob Binson, has delivered unto the defendant, Boris Bannai,

or one of the legal entities owned in whole or in part by the said Boris Bannai, the

amount of $2,500,000.00 in United States currency.

3.  The plaintiff, Jacob Binson, is a citizen of the United States of America and a

resident of New Jersey. The named defendant, Boris Bannai, is a citizen of the nation

of Israel and is present in the United States on a business visa.

W & TAYYERSON, L.C.
TTORNEYS AT LAW
OINT PLEASANT. WV

4. The said Boris Bannai has refused to perform his obligations and promises pursuant to said contract and has refused to deliver in whole or in part unto the plaintiff, Jacob Binson, the transfer of the shares of stock and/or ownership in a variety of the legal entities set out in said "Exhibit A". Also, the named defendant, Boris Bannai, has refused and failed to comply with numerous other of his obligations pursuant to said "Exhibit A". Pursuant to the terms of the agreement, Jacob Binson, was to become the owner of 20% of Highlanders Alloys, LLC, in addition to other related entities. The defendant, Boris Bannai, may have created or acquired other entities utilizing the assets of Highlanders Alloys, LLC. Jacob Binson should be the owner of 20% of the shares of those entities. These entities include: Industrial Development, LLC, and Global Industrial Projects, LLC.

5. The said Boris Bannai, without the benefit of counsel, composed, drafted and prepared said "Exhibit A", which is executed by all of the parties.

6. On the 25th day of October, 2004, the plaintiff, Jacob Binson, demanded that the said Boris Bannai perform his obligations pursuant to said "Exhibit A".

7. The defendants, All Crane Rental Corp., an Ohio Corporation, Aggreko, Inc., a Louisiana Corporation, and Air Equipment Sales and Service, Inc., a Kentucky Corporation, are creditors of record of one or more of the other named defendants.

8. In addition, the plaintiff, Jacob Binson, has invested much personal time, expenses and other monetary contributions unto the said Boris Banni and said corporations.

9. Prior to the execution of said "Exhibit A", the defendant, Boris Bannai, had formed Industrial Development, LLC, and Global Industrial Projects, LLC.

W & TATTERSON, L.C.
TTORNEYS AT LAW
OINT PLEASANT, WV

10.   The plaintiff, Jacob Binson, has reason to believe, and does believe, that one or more of said corporations, and possibly unnamed entities or persons, are in the process of purchasing the claims of the creditors named above and other creditors at a discount, and having said claims assigned to them, making them the creditors of the company or companies into which the money and investment of the said plaintiff, Jacob Binson, has been transferred.

11.     Boris Bannai fraudulently induced plaintiff Jacob Binson to invest money in his companies and used the money to purchase the claims of the creditors named above and other creditors at a discount, and having said claims assigned to them, making them the creditors of the company or companies into which the money and investment of the said plaintiff, Jacob Binson, has been transferred.

12.   Also attached hereto and incorporated herein by reference and marked "Exhibit B" is a letter dated October 29, 2004, signed by the said defendant, Boris Bannai, to Jacob Binson wherein he, in effect, refuses to comply with is obligations for the reason that he says that the said plaintiff, Jacob Binson, is in default in payment of his investments.

13.   With regard to the foregoing paragraph number 11 above, the plaintiff, Jacob Binson, had deposited with his attorney all of the balance of the monies required by him to pay pursuant to the terms of said "Exhibit A". However, his attorney, Jay Lazerowitz, quite properly, refused to deliver the balance thereof to the said Boris Bannai, for the reason that the said Boris Bannai refused to acknowledge, in writing, the delivery and transfer of said money, the receipt thereof, as well as acknowledging,

in writing, the receipt of monies already transferred from the plaintiff, Jacob Binson, to the said defendant, Boris Bannai.

14.  This Court has earlier appointed a Special Commissioner to prioritize numerous creditors' claims of record against one or more of the named defendants. This appointment was made by an order of this Court in the cause of ALL CRANE RENTAL CORP., an Ohio Corporation, AGGREKO, INC., a Louisiana Corporation, and AIR EQUIPMENT SALES AND SERVICE, INC., a Kentucky Corporation, Plaintiffs, vs. HIGHLANDERS ALLOYS, LLC, A West Virginia limited liability company, ET AL, Defendants, CIVIL ACTION NO. 02-C-159-N. The Supplemental Commissioner's Priority Report by said Special Commissioner is marked "Exhibit C" and attached hereto and incorporated herein by reference. The time within which to object to the recommendations of the said "Exhibit C" has expired and no objections were filed.

15.  As can be seen clearly by said "Exhibit C", the finances of Highlanders Alloys, LLC, and the other named defendants, excluding the creditors' claims, are all very intertwined, complicated, murky, and extremely difficult to understand, and create a complex set of legal issues that need to be addressed and resolved in a Court of law.

16.  The plaintiffs aver and allege and submit to the Court that the fact situation set out above will be best addressed by this Court appointing a Special Commissioner, Receiver, Financial Advisor, or a combination thereof, and immediately freeze the assets of the defendants named above, excluding the named creditors.

17.  Upon investigation, after the delivery of said monies, the plaintiff, Jacob Binson, discovered that the said Highlanders Alloys, LLC, is no longer an active

.W & TATTERSON, L.C.
\TTORNEYS AT LAW
OINT PLEASANT, WV

corporation in the State of West Virginia. The said plaintiff, Jacob Binson, relied upon
the representations of the said defendant, Boris Bannai, that Highlanders Alloys, LLC,
was an active legal entity and acted thereon to his detriment. Without the Court
entering this legal entanglement, the Plaintiffs stand to and will be irreparably
damaged, which they may be in whole or in part at this time, if the relief sought is not
granted.

      18.    That Plaintiffs as a result of the foregoing allegations do allege and aver
that the Defendants, Boris Bannai, and the aboove mentioned corporations, excluding
the creditors, pursuant to the direction of the said Boris Bannai are guilty, in addition to
what is alleged above, of the causes of actions of:

      a.    Misrepresentation;

      b.    Misappropriation;

      c.    Breach of Fiduciary Duty:

      d.    Breach of Contract;

      e.    Conversion;

      f.    Violation of Consumer Protection laws of West Virginia;

      g.    Violation of criminal statute.

      19.    Based on all of the above, Plaintiffs are entitled to punitive damages from
Defendants.

      WHEREFORE, your plaintiffs, pray that:

      (a) This Court enter a permanent restraining order forthwith and set a date for a
full hearing for the prayer of the plaintiffs seeking a preliminary injunction.

W & TATTERSON. L.C.
ATTORNEYS AT LAW
OINT PLEASANT, WV

(b)  That the Court appoint a Special Commissioner, Receiver, Financial Advisor, or a combination thereof to begin an immediate investigation and accounting of the disbursement of funds received by any of the named defendants, excluding the creditors named above, of funds received from the plaintiff, Jacob Binson, personally, and/or legal entities owned in whole or in part by the said Jacob Binson.

(c)  That this Court freeze all of the assets of the above named companies, with the exception of the named creditors.

(d)  That this Court order specific performance of the contract between the Plaintiffs and Defendant.

(e)  Frankly, your plaintiffs are requesting that this Court order an investigation as to the whereabouts of the $2,500,000.00 as invested by the plaintiff, Jacob Binson, as set out herein.  For example, a substantial amount of money was transferred by the plaintiff, Jacob Binson, to the said Boris Bannai directly and to legal entities owned in whole or in part by the said Boris Bannai both inside and outside of the State of West Virginia and the United States of America, such as a significant amount which was transferred at the request of the said defendant, Boris Bannai, to a legal entity in South Africa and Cypress as part of the payment required by the said Jacob Binson unto the said Boris Bannai as provided in "Exhibit A" above.

(f)  That this Court award Plaintiffs punitive damages.

(g)  That this Court consider and grant Plaintiffs' Motion to Disqualify Mark Ferguson from acting as attorney for Boris Bannai.

(h)  That this Court grant unto the plaintiffs such other, further and general relief as the plaintiffs may ask or the Court deem appropriate.

W & TATTERSON, L.C.
TTORNEYS AT LAW
OINT PLEASANT, WV

Dated this the 16th day of January, 2005.

JACOB BINSON,
BY HIS ATTORNEY

R. Michael Shaw
Shaw & Tatterson, L. C.
Attorneys for Plaintiffs
610 Main Street
Point Pleasant, WV 25550

"EXHIBIT A "

FROM :                        FAX NO. :                    Nov. 03 2004 01:51PM  P3

Date, September, 27, 2004
MEMORANDUM OF UNDERSTANDING # 1

Boris Bannai (B.B.) from one side and Jacob Binson and Itzhak Bannai (I.J.) from the
other side agreed as follows.

1   B.B. will sell and I.J. will purchase 50% of the companies shares, which companies
(together will own 62.13% shares of the Steel Plant in Poland by the name "Huta Pokoj"
S.A. ul. Niedumego 79, 41-709 Ruda Slaska, for the price of USD 10,000,000 (ten
million US Dollars) (purchase price) with the following conditions:

1.1 The payment of purchase price will be made by I.J. within three years from the date of
this memorandum. Upon coming in to force of this memorandum B.B and I.J. will
have equal rights (50%-50%) in the companies mentioned in paragraph 1 of this
memorandum.

1.2 B.B. will transfer to trustee mutually appointed between B.B. and I.J. 50% of the shares
(subject of this memorandum) with the agreement that trustee will transfer the shares to
I.J. after payment of USD 10,000,000 (ten million US Dollar).

1.3 I.J. will not have any rights to sell or pledge any shares of the companies mentioned in
paragraph 1 without agreement of B.B. B.B has the right to sell or pledge the shares if
the price offered for the shares by potential purchaser or credit provider will be not less
then USD 100,000,000 (One hundred million US Dollars) value of the 100% companies
shares, in the event, that B.B. will decide to sell or pledge is own 50% shares or part of it
of the companies mentioned in paragraph 1, first he has to offer the same price and
condition to the I.J. that potential purchaser or credit provider agrees to. If I.J. will refuse
to purchase offered shares or to provide credit, then he has the right to sell or to pledge
his own shares in equal proportion with B.B. to the potential purchaser or credit provider.

1.4 B.B. and I.J. guaranteeing to enter in to final sell and purchase agreement within 45 days
from the date of this memorandum. B.B and I.J. upon signing of this memorandum will
start immediately register new companies and after registering this companies B.B
without any delay will arrange transfer of 62.13% shares of Huta Pokoj. Out of this
62.13% shares I.J. acknowledges that to transfer 12.33% shares required Polish citizen or
authorization of Polish Interior Ministry. B.B. declares that all 62.13% are under his
control, B.B. agrees that if in future for any reason from the past companies mentioned
above will loose any ownership or will have to satisfy any claims B.B. will take
responsibility up to the amount paid as a purchase price by I.J. If in the future B.B. or I.J.
will purchase any additional shares of Huta Pokoj both sides obliged to transfer this
shares proportionally in to the partnership.

1.5 This memorandum coming in to force upon providing by I.J. shareholder loan of USD
3,100,000 (three million one hundred thousand) to companies controlled by B.B. as
described in memorandum # 2. This shareholder loan will be converted as a part of
purchase price for the companies mentioned in paragraph 1. The remaining payment of
USD 6,900,000 (six million nine hundred thousand) will be paid from the first profits of
I.J. unless I.J. will decide to pay the balance of USD 6,900,000 (six million nine hundred
thousand) before the profits mentioned in memorandums #1 and # 2. If no profits will

be made in the companies mentioned in memorandums # 1 and # 2 then payment for the companies mentioned in paragraph  1 will be extended until such profits or income will cover balance of the purchase price of USD 6,900,000 (six million nine hundred thousand).

## MEMORANDUM OF UNDERSTANDING # 2

2   B.B. agrees, that I.J. after signing of this memorandums will become partner in the other companies owned by B.B as described below in the condition of partnership.

Companies owned by B.B. are as follows:
a.   Ferm Alloy plant in USA, by name Highlanders Alloys. 100%.
b.   Manganese Mine in Namibia by name Purity Manganese. 100%
c.   Manganese Mine in South Africa by name Rahida Investments. 100%.
d.   All the affiliated companies.

Conditions of the partnership in the companies mentioned in paragraph 2 are as follow:

2.1   Entering in to partnership will complete only after I.J. will provide to the companies mentioned in paragraph 2 within 30 days from the date of this memorandums shareholder loan of USD 3,100,000 (three million one hundred thousand) and after the full settlement of the debts and obligations by means that no obligation or any claims will remain for any partnership in the companies mentioned in paragraph 2 by the creditor and right holder Bh Reifman. B.B. will use all the efforts to settle with Bh Reifman after sufficient capital will be generated to pay out. In between companies will be ruled as a partnership as intended in this memorandum.

2.2   After providing shareholder loan and setling of the debts and obligations mentioned in paragraph 2.1 B.B. will transfer to  I.J. 20% of the shares from companies 100% shares mentioned in paragraph 2.

2.3   To the best knowledge of B.B. estimated debts of the companies are approximately as follows:

| | |
|---|---|
| a. Bli Reifman | |
| b. Shlomo Biniashvili | USD- 12,000,000 |
| c. Menbi, Rami and Dorson Biniashvili | USD-   700,000 |
| d. Moshe Zoitman | USD- 1,000,000 |
| e. Ilia Iosobashvili | USD- 1,100,000 |
| f. Temuri Iosobashvili | USD-   300,000 |
| g. Itzhak Bannaj | USD    500,000 |
| h. Jacob Binson up to September 06, 2004 | USD- 1,500,000 |
| i. Boris Bannaj | USD- 1,100,000 |
| j. Highlanders Alloys creditors | USD- 9,000,000 |
| k. Purity Manganese creditors | USD- 3,000,000 |
| l. Rahida Investment creditors | USD-   500,000 |
| m. Debt for Hutu | USD-   500,000 |
| n. Others | USD- 5,200,000 |
| TOTAL ESTIMATED DEBTS | USD-1,000,000 |
| | USD-37,500,000 |

2.4 B.B. and I.J. agreed that from the profits of the companies first will be generated sufficient working capital of minimum USD 10,000,000, then will cover all obligations

FROM :        FAX NO. :       Nov. 03 2004 01:51PM P2

mentioned in paragraph 2.1, then will be repaid all outstanding debts mentioned in paragraph 2.4 and then profits will be shared as 80% to B.B and 20% to I.J.

2.5 I.J. will have in the companies mentioned in paragraph 2 minority rights according US or Israeli corporation law

2.6 I.J. will not have any rights to sell or pledge any shares of the companies mentioned in paragraph 2 without agreement of B.B. B.B has the right to sell or pledge the shares if the price offered for the shares by potential purchaser or credit provider will be not less then USD 100,000,000 (One hundred million US Dollars) value of the 100% companies shares. In the event, that B.B. will decide to sell or pledge is own 80% shares or part of it of the companies mentioned in paragraph 2, first he has to offer the same price and condition to the I.J. that potential purchaser or credit provider agrees to, If I.J. will refuse to purchase offered shares or to provide credit, then he has the right to sell or to pledge his own shares proportionally (B.B.80%-I.J.20%) with B.B. to the potential purchaser or credit provider.

2.7 Upon signing of this memorandum the memorandum dated September 6, 2004 are canceled,

In case of dispute between the parties regarding this document, its interpretation or its performance, the parties shall nominate third party as an arbitrator.

B.B. _____
Boris Bannai

I.J. _____
Jacob Bitson

I.J. _____
Itzhak Bannai

"Exhibit B"

10/29/2004 04:49 FAX  13048822503   13048822503        GLOBAHIGHLANDERS_ALLOYSG          ☐ 007/001

October 29, 2004

Jay L. Lazorowitz, Esq.

55 Harristown              *By Certified Mail, Fax (201) 670-6332*
Glen Rock                   *and email: lzerlawus@aol.com*
New Jersey, 07452

Re: Your letter dated October 25, 2004 on behalf of Mr. Jack Binson

Dear Mr. Lazorowitz:

Your above mentioned letter presents an inaccurate reading, to say the least, of the Memorandum of Understanding of September 27, 2004.

Mr. Jacob Binson and Mr. Itzhak Bannai ("Counterparty"), the counter party to said Memorandum, have materially failed to live-up to their commitment to make a loan.

Pursuant to Counter Party representations and signed Memorandum, money's due under the Memorandum were relied on and a financial plan was made and executed to the extent made possible given Counter Party's decision to default on its commitment.

Significant funds and efforts have been invested relying in good faith on the written word of Counter Party.

Significant damages are expected due to the sudden lack of funding at this vulnerable stage, all of which Counter Party is well aware of.

According to said Memorandum Counter Party was to complete furnish of said loan by October 26, 2004. Though over due, several verbal requests to make payment of the outstanding balance on the loan to be furnished were made, both to Jacob Binson and to Itzhak Bannai. Finally, a deadline for said payment, by the end of business October 29, 2004, was presented in an attempt to allow Counterparty to correct its failure, live up to its commitment and minimize damages.

Regretfully counter Party chose to default.

It is therefore that I hereby declare and record that said Memorandum did not come into effect and is now null and expired (no further extension of term is granted), due to failure of Counterparty to bring said Memorandum into effect in a timely fashion.

Alternatively, for the sake of caution, should said Memorandum be (wrongfully) deemed in-effect at any past point in time, I hereby void said Memorandum, effective immediately, due to material default of Counterparty.

I reserve all rights to collect all damages caused by Counterparty's conduct.

On a personal note I wish to state and hold my deepest disappointment of Counterparty's attempt to exploit and abuse a temporary cash-flow weakness to change the agreed upon, already discounted, terms.

Sincerely,

Boris Bannai

CC:   Jacob Binson        by Faxes: 1 718 871 3631, 1 973 287 4159
      Itzhak Bannai       by emails: vbeconet@yahoo.com, netsmca007@yahoo.com &
                          Fax: +972 3 585 2076

STATE OF WEST VIRGINIA,

COUNTY OF MASON, TO-WIT:

    Jacob Binson _____, named in the foregoing writing,

being first duly sworn, deposes and says that the facts and allegations therein

contained are true, except so far as they are therein stated to be on information, and

that so far as they are therein stated to be on information, said party believes them to

be true.

_____

Taken, subscribed and sworn to before me this the ___15___ day of

___FEBRUARY___, 2005. R.m.s

My commission expires: _____ 1-28-'09

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
R. MICHAEL SHAW
610 MAIN ST.
POINT PLEASANT, WV 25550
My Commission Expires January 28, 2009

_____
Notary Public.

R. MICHAEL SHAW, L.C.
ATTORNEYS AT LAW
POINT PLEASANT, W. Va.

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA.

**Jacob Binson and Itzhak Bannai,**
**Plaintiffs**

**vs.**                                                    **Civil Action No. 04-C-196**

**American Alloys, Inc.;**
**Industrial Development, LLC;**
**Highlanders Alloys, LLC,**
**Global Industrial Projects, LLC,**
**Boris Bannai, individually and as a stockholder**
**And/or officer in the foregoing corporations, and**
**All Crane Rental Corporation, an Ohio Corporation,**
**Aggreko, Inc., a Louisiana Corporation,**
**Air Equipment Sales and Service, Inc., a**
**Kentucky Corporation,**

### CERTIFICATE OF SERVICE

I, R. Michael Shaw, Counsel for the Plaintiffs, do hereby certify that I served a

true copy of the AMENDED COMPLAINT AND PETITION FOR PRELIMINARY

INJUCTION upon the following Counsels for Defendants, by depositing the same in

the United States Mail, first class postage prepared, addressed as follows, this the

16th day of February, 2005.

Mark A. Ferguson, Esq.                      Gary A. Collias, Esq.
SPROUSE & FERGUSON, PLLC                     P.O. Box 70007
230 Capitol Street, Suite 300               Charleston, West Virginia 25301-0007
Charleston, West Virginia 25301

Mary K. Prim, Esq.
THAXTON & JOHNSTONE, LLP
P.O. Box 313
Charleston, West Virginia 25321

R. MICHAEL SHAW

2/16/05

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA.

**Jacob Binson and Itzhak Bannai,**
**Plaintiffs,**

**vs.**                                                    **Civil Action No. 04-C-196**

**American Alloys, Inc.;**
**Industrial Development, LLC;**
**Highlanders Alloys, LLC,**
**Global Industrial Projects, LLC,**
**Boris Bannai, individually and as a stockholder**
**And/or officer in the foregoing corporations, and**
**All Crane Rental Corporation, an Ohio Corporation,**
**Aggreko, Inc., a Louisiana Corporation,**
**Air Equipment Sales and Service, Inc., a**
**Kentucky Corporation.**
**Defendants.**

### MOTION FOR PRELIMINARY INJUNCTION
### AND APPOINTMENT OF A SPECIAL RECEIVER

Now come the Plaintiffs, Jacob Binson and Itzhak Bannai, and for their Motion

for a Preliminary Injunction and Appointment of a Special Receiver state as follows:

1.     Plaintiffs incorporate paragraphs 1-17 of their Amended Complaint and

Petition for Preliminary Injunction as if fully written herein.

2.     West Virginia Code § 53-6-1 permits the Court to appoint a special

receiver where the funds of a corporation, firm, or person are involved and there is

danger of the "loss or misappropriation" of the same.

3.     Plaintiffs have alleged in their complaint that Boris Bannai fraudulently

induced Plaintiff, Jacob Binson, to invest a large sum of money with Boris Bannai and

Highlanders Alloys, LLC.

AW & TATTERSON. L.C.
ATTORNEYS AT LAW
POINT PLEASANT, WV

WHEREFORE, your Plaintiffs pray that this Court issue an immediate *ex parte* injunction and issue a preliminary injunction where all assets of Boris Bannai, Highlanders Alloys, LLC, and other named defendants and other legal entities owned in whole or in part by the said Boris Bannai, are hereby ordered frozen, with the exception of routine payroll expenditures to employees, purchases, sales and other payments in the ordinary course of business and as required to meet ordinary course contractual obligations and normal day to day operating expenses; appoint a special receiver for Boris Bannai, Highlanders, LLC, and other named defendants and other legal entities owned in whole or in part by the said Boris Bannai; further, Plaintiffs pray that if the facts are developed at the hearing in February 25, 2005, to the extent that that a permanent injunction should be ordered, the Plaintiffs ask for the same; and for such other relief as this Court.

JACOB BINSON,
BY HIS ATTORNEY

R. Michael Shaw (WVSB# 3354)
Shaw & Tatterson, L. C.
Attorneys for Plaintiffs
610 Main Street
Point Pleasant, WV 25550

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA.

**Jacob Binson and Itzhak Bannai,**
           **Plaintiffs,**

**vs.**                                 **Civil Action No. 04-C-196**

**American Alloys, Inc.;**
**Industrial Development, LLC;**
**Highlanders Alloys, LLC,**
**Global Industrial Projects, LLC,**
**Boris Bannai, individually and as a stockholder**
**And/or officer in the foregoing corporations, and**
**All Crane Rental Corporation, an Ohio Corporation,**
**Aggreko, Inc., a Louisiana Corporation,**
**Air Equipment Sales and Service, Inc., a**
**Kentucky Corporation.**
                     **Defendants.**

### CERTIFICATE OF SERVICE

     I, R. Michael Shaw, Counsel for the Plaintiffs, do hereby certify that I served a

true copy of the MOTION FOR PRELIMINARY INJUCTION AND APPOINTMENT OF

A SPECIAL RECEIVER upon the following Counsels for Defendants, by depositing

the same in the United States Mail, first class postage prepared, addressed as

follows, this the 16th day of February, 2005.

Mark A. Ferguson, Esq.               Gary A. Collias, Esq.
SPROUSE & FERGUSON, PLLC      P.O. Box 70007
230 Capitol Street, Suite 300         Charleston, West Virginia 25301-0007
Charleston, West Virginia 25301

Mary K. Prim, Esq.
THAXTON & JOHNSTONE, LLP
P.O. Box 313
Charleston, West Virginia 25321

                                         R. MICHAEL SHAW

AW & TATTERSON, L.C.
ATTORNEYS AT LAW
POINT PLEASANT, WV

IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA

*2/17/05*

**JACOB BINSON and ITZHAK BANNAI,**

Plaintiffs,

vs.                                                                 Civil Action No. 04-C-196

**AMERICAN ALLOYS, INC.,
INDUSTRIAL DEVELOPMENT, LLC,
HIGHLANDERS ALLOYS, LLC,
GLOBAL INDUSTRIAL PROJECTS, LLC,
BORIS BANNAI, individually and as a stockholder
and/or officer in the foregoing corporations, and
ALL CRANE RENTAL CORPORATION, an Ohio Corporation,
AGGREKO, INC., a Louisiana Corporation,
AIR EQUIPMENT SALES AND SERVICE, INC., a
Kentucky Corporation,**

Defendants.

## OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION
## AND APPOINTMENT OF SPECIAL RECEIVER

COME NOW Defendants, Boris Bannai, Highlanders Alloys, LLC, Industrial Development,

LLC and Global Industrial Projects, LLC, by counsel, Mark A. Ferguson and the law firm of Sprouse

& Ferguson, PLLC, and Gary A. Collias, and file this Objection to Motion for Preliminary Injunction

and Appointment of Special Receiver, and state as follows:

1.      Plaintiff Jacob Binson filed an Amended Complaint and Petition for Preliminary

Injunction dated February 16, 2005, which in part included a Motion for Preliminary Injunction and

Appointment of Special Receiver.

2.      Hearing on this motion was set, pursuant to Notice of Hearing, for February 25, 2005

in the Circuit Court of Mason County, West Virginia, at 11:15 a.m.

3. As part of the Motion for Preliminary Injunction, Binson requests that the Court issue an immediate *ex parte* injunction and preliminary injunction freezing all assets of Bannai and related entities.

4. This action has been instituted, counsel for Bannai and his entities have made appearances, and the action has been pending since initially filed in November 2004.

5. As noted, hearing on this issue has been set within the next week, in order for the Court to consider Binson's motion for preliminary injunction.

6. Defendants therefore object to any immediate *ex parte* injunction or other extraordinary relief be issued by the Court prior to the aforesaid hearing date. Plaintiffs have shown no grounds for any injunctive relief, let alone extraordinary *ex parte* relief before the scheduled hearing date.

7. Because this matter has been set for hearing and counsel have appeared, it would be improper the Court to consider or issue any *ex parte* relief in advance of such hearing.

WHEREFORE, Defendants Boris Bannai, Highlanders Alloys, LLC, Industrial Development, LLC and Global Industrial Projects, LLC object to the request for ex parte injunctive relief, and ask that the Court take no action on this matter until the scheduled hearing has occurred.

> BORIS BANNAI,
> HIGHLANDERS ALLOYS, LLC,
> INDUSTRIAL DEVELOPMENT, LLC,
> GLOBAL INDUSTRIAL PROJECTS, LLC
>
> By Counsel,

2

Mark A. Ferguson
SPROUSE & FERGUSON, PLLC
230 Capitol Street, Suite 300
Charleston, West Virginia 25301
(304) 342-9100
WV Bar #1182

Gary A. Collias, Esquire
P.O. Box 70007
Charleston, West Virginia 25301-0007
(304) 344-3653
WV Bar #784

Counsel for Defendants

3

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA

**JACOB BINSON and ITZHAK BANNAI,**

**Plaintiffs,**

vs.                                          **Civil Action No. 04-C-196**

**AMERICAN ALLOYS, INC.,**
**INDUSTRIAL DEVELOPMENT, LLC,**
**HIGHLANDERS ALLOYS, LLC,**
**GLOBAL INDUSTRIAL PROJECTS, LLC,**
**BORIS BANNAI, individually and as a stockholder**
**and/or officer in the foregoing corporations, and**
**ALL CRANE RENTAL CORPORATION, an Ohio Corporation,**
**AGGREKO, INC., a Louisiana Corporation,**
**AIR EQUIPMENT SALES AND SERVICE, INC., a**
**Kentucky Corporation,**

**Defendants.**

### CERTIFICATE OF SERVICE

Mark A. Ferguson and Gary A. Collias, counsel for Defendants do hereby certify that the

foregoing **OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION AND**

**APPOINTMENT OF SPECIAL RECEIVER** has been served upon counsel of record as indicated

below by mailing a true and exact copy thereofto:

> R. Michael Shaw, Esquire
> Shaw & Tatterson, L.C.
> 610 Main Street
> Point Pleasant, West Virginia 25550
>
> Daniel J. Konrad, Esquire
> Huddleston Bolen, LLP
> Post Office Box 2185
> Huntington, West Virginia 25722-2185

Mary K. Prim, Esquire
Thaxton & Johnstone, LLP
1125 Virginia Street, East
Charleston, West Virginia 25301

in a properly stamped and addressed envelope, postage prepaid, and depositing the same in the

regular course of the United States mail this 17th day of February, 2005.

Mark A. Ferguson

IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA

JACOB BINSON and
ITZHAK BANNAI,

      Plaintiffs,

vs.                                         Civil Action No. 04-C-196

AMERICAN ALLOYS, INC.,
INDUSTRIAL DEVELOPMENT, LLC,
HIGHLANDERS ALLOYS, LLC,
GLOBAL INDUSTRIAL PROJECTS, LLC,
BORIS BANNAI, Individually and as a
stockholder and/or officer in the
foregoing corporations, and
ALL CRANE RENTAL CORPORATION, an
Ohio corporation,
AGGREKO, INC., a Louisiana corporation,
AIR EQUIPMENT SALES AND SERVICE, INC.,
a Kentucky corporation,

      Defendants.

## DEFENDANT'S MEMORANDUM IN RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND APPOINTMENT OF SPECIAL RECEIVER

Now come the defendants, Boris Bannai, Highlanders Alloys,

LLC, Industrial Development, LLC and Global Industrial Projects, LLC, by

undersigned counsel, Gary A. Collias and Mark A. Ferguson, in opposition

to the Motion for Preliminary Injunction and Appointment of Special

Receiver filed heretofore by the plaintiffs in this case.

The plaintiff herein, Jacob Binson filed a Motion for Preliminary Injunction and Appointment of Special Receiver and cites as authority for that motion, West Virginia Code §53-6-1 which deals with the issue of appointment of special receivers.  Section 53-6-1 makes it clear that a Court of equity may in a proper case in which funds or property of a corporation, firm or person are involved, and there is a danger of loss or misappropriation,  appoint a Special Receiver.

As pointed out by the defendants in their Motion to Dismiss, while this case is pled as an equitable suit, it is in fact a common law action brought by a common creditor for breach of contract and therefore, no equitable remedy, including appointment of receiver, is appropriate.  These matters are set forth in detail in the Defendants' Motion to Dismiss and will not be further addressed here.

It needs to be pointed out, however, that the plaintiff Binson and has the burden of proving to this Court he is more than a common creditor and that there is a substantial danger of loss or misappropriation unless a special receiver is appointed.

The law in West Virginia is clear that even a Court of equity has no jurisdiction to appoint a special receiver at the request of a simple contract creditor whose claim has not been reduced to judgment and

2

who has no specific lien on the assets in question. *Thompson v. Adams, 55 S.E. 668 (1906 WV) and Maxwell v. McDaniels, 184 F. 311 (4th Cir. 1910)* (originating in the Northern District of West Virginia).

Even in the circumstances of one engaged in a joint venture with another, who has filed a suit for an accounting, the plaintiff is not entitled to appointment of receiver though his interest in the property and business has been denied and he has been wrongfully excluded from participation in the profits and the managing party has tried to sell the property, without proof of fraud, insolvency, et cetera. *Kaufman v. Catzen, 94 S.E. 388 (1917 WV)*. In the present case, as in *Catzen*, Binson is not granted any management rights or right of control in the contract, and therefore, as in *Catzen*, he is not entitled to a receiver.

A receivership is a harsh, drastic and costly remedy, and, in order to obtain the appointment of a receiver, plaintiff must show a clear right to the property or a lien thereon, or a right to resort to it for the satisfaction of a debt, and if the allegations in the complaint are fully denied by an answer, and not sustained by the evidence, the request for the appointment of receiver should be denied. *Sult v. Hochstetter Oil Company, 61 S.E. 307 (1908 WV)*.

In order to obtain the appointment of receiver, the plaintiff

3

must show first either that he has a clear right to the property itself or
that he has some lien upon it or that the property constitutes a special
fund to which he has a right to resort for satisfaction of his claim, and
secondly, that the possession of the property by the defendant was
obtained by fraud or that the property itself or the income arising from
it is in danger of loss from the neglect, waste, misconduct or insolvency
of the defendant. *Kanawha Coal Company v. Ballard & Welch Coal
Company, 29 S.E. 514 (1897 WV)*.

As can be seen from the above cited authority, the plaintiff
Binson must prove to this Court by clear and convincing evidence that
this case properly sounds in equity and furthermore, that there is a
danger of loss or misappropriation by the defendants if a receiver is not
appointed.   Further, the plaintiff must show that he is more than a
common contract creditor and has a right to the property or a lien
thereon or the right to resort to the property for satisfaction of a debt.

In the present case, Binson is in fact a common contract
creditor.    Binson's Amended Complaint and Petition for Preliminary
Injunction itself clearly reflects a written contract between him and the
defendant Boris Bannai. The complaint itself in paragraph numbers 1,
4 and 6 makes it absolutely clear that this is a suit for breach of contract.

4

Furthermore, the complaint does not allege and the plaintiff cannot prove that there is any danger of loss or misappropriation of the funds that give rise to this dispute in the event a receiver is not appointed. The contract in question is simply an agreement between Binson and Boris Bannai and none of the defendant corporations are in fact parties to that agreement and that agreement does not reflect that there is any lien or special right created on the part of Binson to receive this money upon the alleged breach of defendant Bannai.

More importantly, the granting of the receivership as sought by Binson creates a substantial danger of sabotaging and possible long-term damage to the current operations for the manufacture of manganese in the Mason County area, which operations employ a large number of workers. In fact, there is no one more qualified than Bannai to operate these companies. A receiver is completely impractical and would lack the necessary business knowledge and experience in the alloy market. Thus, Binson's requested relief is unsupported by the law or the facts, and would impose a substantial and unjust burden on defendants at the very inception of this litigation that would cause substantial prejudice to the defendants and perhaps, to many others.

Finally, Binson also seeks in his motion a preliminary

5

injunction which would freeze all of the assets of Boris Bannai,
Highlanders Alloys and any and all other named defendants or other legal
entities owned in whole or in part by Boris Bannai.  Boris Bannai is a
citizen and resident of Israel and owns all or part of corporations
operating in your Africa, Asia, Europe and North America, including some
of the defendants in this case, but also including other corporations.  It
would be totally impractical for this Court to freeze all of Mr. Bannai's
assets and the assets of all those corporations.

Furthermore, Binson has not shown and cannot show any
evidence that there is any risk of loss or misappropriation by Banni of
any assets that would be used to satisfy any judgment Binson might
ultimately receive in this case.  Binson is simply attempting to win his
lawsuit at the beginning rather than at the end of discovery and a trial
on the merits. Every creditor would like to have the money to satisfy its
claim set aside and held safely in the event it ultimately prevails, it will
be able to collect.  There is nothing unique or special about the claim of
Binson that entitles him to special treatment over and above any
common creditor.

. Accordingly, since this case is not properly before the Court
as an equity case, since there is no danger of loss or misappropriation

6

and since Binson has no lien or special right to look to the assets he

attempts to freeze, and for other reasons set forth in this memorandum

or appearing to the Court, this Court should deny the motion of Binson

for preliminary injunction and the appointment of a special receiver.

Boris Bannai, Highlanders
Alloys, LLC, Industrial Development,
LLC and Global Industrial Projects, LLC
BY COUNSEL

Gary A. Collias (WVSB #784)
Attorney at Law
P.O. Box 70007
122 Capitol Street, Suite 300
Charleston, WV 25301-0007
Telephone: (304) 344-3653

Mark A. Ferguson (WVSB #1182)
Sprouse & Ferguson, PLLC
230 Capitol Street, Suite 300
Charleston, WV 25301

Counsel for Defendants
Boris Bannai, Highlanders
Alloys, LLC, Industrial Development,
LLC and Global Industrial Projects, LLC

7

06/01/2005  01:35  304-342-9119  SPROUSE & FERGUSON  PAGE  20/32
Case 3:05-bk-30516  Doc 10-1  Filed 06/06/05  Entered 06/06/05 11:44:54  Desc
02/23/2005  17:15  3046752654  Exhibit  PageRSHIOFAE115HAW LC  PAGE  02

2/23/05

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA.

Jacob Binson and Itzhak Bannai,
                    Plaintiffs,

vs.                                        Civil Action No. 04-C-196

American Alloys, Inc.;
Industrial Development, LLC;
Highlanders Alloys, LLC,
Global Industrial Projects, LLC,
Boris Bannai, individually and as a stockholder
And/or officer in the foregoing corporations, and
All Crane Rental Corporation, an Ohio Corporation,
Aggreko, Inc., a Louisiana Corporation,
Air Equipment Sales and Service, Inc., a
Kentucky Corporation.
                    Defendants.

### PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

Defendants, Boris Bannai, Highlanders Alloys, LLC, Industrial Development,

LLC, and Global Industrial Projects, LLC, have filed a Motion to Dismiss based upon

the following:

1.    Lack of Personal Jurisdiction

2.    Lack of Proper Venue

3.    Insufficiency of Process

4.    Insufficiency of Service of Process

5.    Failure to State a Claim

For the reasons stated below, said Motion should be denied.

In response to Defendants' contention this Court lacks personal jurisdiction

and venue, it appears uncontested that although Boris Bannai may be a citizen of

Israel, at the present time he is operating a manufacturing facility in Mason County,

KAW & TATTERSON, L.C.
ATTORNEYS AT LAW
POINT PLEASANT, WV

West Virginia. Additionally, he is allegedly the sole member of at least three West Virginia organized Limited Liability Companies—those being the co-defendants Highlanders Alloys, LLC, Industrial Development, LLC and Global Industrial Projects, LLC. (See Exhibits A, B and C)  Furthermore, Boris Bannai was served with process in West Virginia, where he is living. (See Exhibit D)  Therefore, the Court has an Israeli citizen doing business in West Virginia, living in West Virginia, incorporating business in West Virginia, yet asserting that there is no jurisdiction over him in West Virginia and that venue is improper in West Virginia. This Court has jurisdiction and venue over Boris Bannai, and his Motion to Dismiss for "Lack of Personal Jurisdiction" and "Lack of Proper Venue" must be denied.

Insufficiency of Process and Insufficiency of Service of Process is alleged by Defendants, but it is not addressed in their Motion to Dismiss. Boris Bannai, resides in West Virginia and was served in West Virginia. Accordingly, Defendants' Motion to Dismiss for "Insufficiency of Process" and "Insufficiency of Service of Process" must be denied.

Failure to state a claim is also alleged only by Defendants Highlanders Alloys, LLC, Industrial Development, LLC, and Global Industrial Projects, LLC. Defendant Boris Bannai did move to dismiss for failure to state a claim. Defendants assert that Highlanders Alloys, LLC, Industrial Development, LLC and Global Industrial Projects, LLC, are not parties to any contractual agreement between Plaintiffs and Defendant Bannai and, therefore, must be dismissed.

Highlanders Alloys, LLC, Industrial Development, LLC and Global Industrial Projects, LLC, are allegedly single member limited liability companies formed under

LAW & TATTERSON, L.C.
ATTORNEYS AT LAW
POINT PLEASANT, WV

the laws of West Virginia by Boris Bannai. Boris Bannai is allegedly the only member of each such LLC. He is also the only manager of each LLC. (See Exhibits A, B, and C). The basis for the lawsuit, as set forth in the Complaint and Amended Complaint, is that Plaintiffs entered into Memorandums of Understanding, attached hereto as Exhibit E. As set forth in those Memorandums, Plaintiffs were to become owners of various entities which specifically included "Highlander Alloys" and "all affiliated companies". Plaintiffs believe that Defendants Industrial Development, LLC and Global Industrial Projects, LLC are clearly "affiliated companies" pursuant to the Memorandums of Understanding. Of particular note is the fact that the Memorandums of Understanding specifically included Highlander Alloys, LLC which entity's existence terminated on October 10, 2003, except for the winding up thereof. (See Exhibit A) Thus, unbeknownst to the Plaintiffs, it is believed the business had been transferred from Highlander Alloys, LLC to those affiliated companies prior to the date of the Memorandums of Understanding.

Plaintiffs have loaned to Boris Bannai and his "related companies" (see Paragraph 2 of Memorandum of Understanding # 2) the sum of $2,600,000.00. These related companies are Highlanders Alloys, LLC, Industrial Development, LLC, and Global Industrial Projects, LLC, so for anyone to now assert that no claim can be stated against said limited liability companies is unfounded. The Motion to Dismiss for failure to assert a claim must be denied.

In addition, Plaintiffs have now amended their Complaint within the provisions of the West Virginia Rules of Civil Procedure to assert causes of action for fraud; misrepresentation; misappropriation; breach of Fiduciary Duty; breach of contract;

SHAW & TATTERSON, L.C.
ATTORNEYS AT LAW
POINT PLEASANT, WV

conversion; violation of consumer protection laws of West Virginia; and violation of

criminal statute.

WHEREFORE, Plaintiffs respectfully request that the Motion to Dismiss filed

by Defendants be denied.

JACOB BINSON AND ITZHAK BANNAI,

By Counsel,

R. Michael Shaw (WV #3354)
Shaw & Tatterson, L.C.
P.O. Box 3
610 Main Street
Pt. Pleasant, WV 25550
(304) 675-2669

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA.

Jacob Binson and Itzhak Bannai,
                              Plaintiffs,


vs.                                              Civil Action No. 04-C-196


American Alloys, Inc.;
Industrial Development, LLC;
Highlanders Alloys, LLC,
Global Industrial Projects, LLC,
Boris Bannai, individually and as a stockholder
And/or officer in the foregoing corporations, and
All Crane Rental Corporation, an Ohio Corporation,
Aggreko, Inc., a Louisiana Corporation,
Air Equipment Sales and Service, Inc., a
Kentucky Corporation.
                              Defendants.

### CERTIFICATE OF SERVICE

I, R. Michael Shaw, counsel for Plaintiffs, certify I served the foregoing

"Plaintiffs' Response to Motion to Dismiss" by placing true copies thereof in the

United States Mail, first class postage prepaid, addressed to:

Mark A. Ferguson, Esquire          Gary A. Collias, Esquire
Sprouse & Ferguson, PLLC           P.O. Box 70007
230 Capitol Street, Suite 300      Charleston, WV 25301-0007
Charleston, WV 25301

this the 23rd day of February, 2005.



**West Virginia Secretary of State**
**Business Organization Information System**
Registration Information of Corporations, Limited Liability Companies,
Limited Partnerships and Other Company Types

SOS Home

On-Line Reference

**Name:** HIGHLANDERS ALLOYS, LLC

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Type:** | LLC | **Eff Date:** | 12/4/2001 | **Ch Type:** | D | **Term Date:** | 10/10/2003 |
| **Sec Type:** | | **Fil Date:** | 12/4/2001 | **Class:** | P | **Term Reas:** | R |

| Main | Addresses | Officers | DBAs | Names | Mergers | Subsidiaries |
|---|---|---|---|---|---|---|
| Amendments | Ann Reports | Dissolutions | Results | New Search | Logoff | |

## Officer Information

| Organizer | | | | Member | | | |
|---|---|---|---|---|---|---|---|
| MARK A. FERGUSON | | | | | | | |
| 230 CAPITOL STREET, SUITE 300 | | | | | | | |
| **City** | **State/Pr** | **Country** | **Zip** | **City** | **State/Pr** | **Country** | **Zip** |
| CHARLESTON WV | | USA | 25301 | | | | |
| Organizer | | | | Member | | | |
| | | | | | | | |
| **City** | **State/Pr** | **Country** | **Zip** | **City** | **State/Pr** | **Country** | **Zip** |
| | | | | | | | |
| Manager | | | | Member | | | |
| BORIS BANNAI | | | | | | | |
| U. S. ROUTE 33, EAST | | | | | | | |
| **City** | **State/Pr** | **Country** | **Zip** | **City** | **State/Pr** | **Country** | **Zip** |
| NEW HAVEN | WV | USA | 25265 | | | | |
| Manager | | | | Member | | | |
| | | | | | | | |
| **City** | **State/Pr** | **Country** | **Zip** | **City** | **State/Pr** | **Country** | **Zip** |
| | | | | | | | |

**EXHIBIT A**



**Name:** INDUSTRIAL DEVELOPMENT, LLC

| | | | | | |
|---|---|---|---|---|---|
| **Type:** | LLC | **Eff Date:** | 12/2/2003 | **Ch Type:** | D | **Term Date:** | 9/10/2004 |
| **Sec Type:** | | **Fil Date:** | 12/2/2003 | **Class:** | P | **Term Reas:** | R |

| Main | Addresses | Officers | DBAs | Names | Mergers | Subsidiaries |
|---|---|---|---|---|---|---|
| Amendments | Ann Reports | Dissolutions | Results | New Search | Logoff | |

## Officer Information

| Organizer | Member |
|---|---|
| MARK A. FERGUSON<br>230 CAPITOL STREET<br>SUITE 300<br>City　State/Pr　Country　Zip<br>CHARLESTON WV　USA　25301 | City　State/Pr　Country　Zip |
| **Organizer**<br><br>City　State/Pr　Country　Zip | **Member**<br><br>City　State/Pr　Country　Zip |
| **Manager**<br>BORIS BANNAI<br>230 CAPITOL STREET<br>SUITE 300<br>City　State/Pr　Country　Zip<br>CHARLESTON WV　USA　25301 | **Member**<br><br>City　State/Pr　Country　Zip |
| **Manager**<br><br>City　State/Pr　Country　Zip | **Member**<br><br>City　State/Pr　Country　Zip |

**EXHIBIT B**



**Name:** GLOBAL INDUSTRIAL PROJECTS, LLC

| | | | | | | |
|---|---|---|---|---|---|---|
| **Type:** | LLC | **Eff Date:** | 5/28/2004 | **Ch Type:** D | **Term Date:** | 12/31/2040 |
| **Sec Type:** | | **Fil Date:** | 5/28/2004 | **Class:** P | **Term Reas:** | X |

| Main | Addresses | Officers | DBAs | Names | Mergers | Subsidiaries |
|---|---|---|---|---|---|---|
| Amendments | Ann Reports | Dissolutions | Results | New Search | Logoff | |

### Officer Information

| Organizer | | | | Member | | | |
|---|---|---|---|---|---|---|---|
| MARK A. FERGUSON | | | | | | | |
| 230 CAPITOL STREET, SUITE 300 | | | | | | | |
| City | State/Pr | Country | Zip | City | State/Pr | Country | Zip |
| CHARLESTON WV | | USA | 25301 | | | | |

| Organizer | | | | Member | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| City | State/Pr | Country | Zip | City | State/Pr | Country | Zip |

| Manager | | | | Member | | | |
|---|---|---|---|---|---|---|---|
| BORIS BANNAI | | | | | | | |
| 230 CAPITOL ST., SUITE 300 | | | | | | | |
| City | State/Pr | Country | Zip | City | State/Pr | Country | Zip |
| CHARLESTON WV | | USA | 25301 | | | | |

| Manager | | | | Member | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| City | State/Pr | Country | Zip | City | State/Pr | Country | Zip |

## EXHIBIT C

FILED

DEC 2 2 2004

TERESA C. DEPPNER, CLERK
U.S. District Court of the
Southern District of West Virginia

## SUMMONS
### CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA

JACOB BINSON, ET AL
        PLAINTIFF,

VS.

AMERICAN ALLOYS INC, ET AL
        DEFENDANT.

CIVIL ACTION NO. 04-C-196
JUDGE: DAVID W. NIBERT

3:04-1266

To the above named Defendant:

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby Summoned and required to serve upon R MICHAEL SHAW, plaintiff's attorney, whose address is 610 MAIN STREET, POINT PLEASANT, WV, 25550, an answer including any related counterclaim you may have to the complaint filed against you in the above civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above style civil action.

                                  BILL WITHERS
                                  CLERK OF COURT

Dated: November 24, 2004

              BY: _Sharon Rainey_

                         DEPUTY CLERK

*Please Serve:*
***BORIS BANNAI***
***18TH FLOOR TOP TOWER***
***50 DIZENGOFF STREET***
***TEL AVIV, ISRAEL 64433***

d:\corel\boiler\civsum.wpd

## EXHIBIT D

PLEASE FILE IN CASE NO. _____

## RETURN OF SERVICE

This is to certify that I have served _Boris  Bannai_ ,

in _Mason_ County, this _21_ day of _December_ , 200 _4_ ,

by delivering a true copy thereof to _Doris  Bannai_ ,

in person.

_Gary Wolf_

Taken, subscribed, acknowledged and sworn to before the undersigned

authority, by _____ , in

_____ County, _____ , on this the _____ day of

_____ , 200____ .

My commission expires: _____ .

_____

Notary Public

Date, September, 27, 2004

## MEMORANDUM OF UNDERSTANDING # 1

Boris Bannai (B.B.) from one side and Jacob Binson and Itzhak Barnai (I.J.) from the other side agreed as follows:

1  B.B. will sell and I.J. will purchase 50% of the companies shares, which companies together will own 62.13% shares of the Steel Plant in Poland by the name "Huta Pokoj" S.A. ul. Niedurnego 79, 41-709 Ruda Slaska; for the price of USD 10,000,000 (ten million US Dollars) (purchase price) with the following conditions:

1.1 The payment of purchase price will be made by I.J. within three years from the date of this memorandum. Upon coming in to force of this memorandum B.B and I.J. will have equal rights (50%-50%) in the companies mentioned in paragraph 1 of this memorandum.

1.2 B.B. will transfer to trustee mutually appointed between B.B. and I.J. 50% of the shares (subject of this memorandum) with the agreement that trustee will transfer the shares to I.J. after payment of USD 10,000,000 (ten million US Dollar).

1.3 I.J. will not have any rights to sell or pledge any shares of the companies mentioned in paragraph 1 without agreement of B.B. B.B has the right to sell or pledge the shares if the price offered for the shares by potential purchaser or credit provider will be not less then USD 100,000,000 (One hundred million US Dollars) value of the 100% companies shares. In the event, that B.B. will decide to sell or pledge is own 50% shares or part of it of the companies mentioned in paragraph 1, first he has to offer the same price and condition to the I.J. that potential purchaser or credit provider agrees to. If I.J. will refuse to purchase offered shares or to provide credit, then he has the right to sell or to pledge his own shares in equal proportion with B.B. to the potential purchaser or credit provider.

1.4 B.B. and I.J. guaranteeing to enter in to final sell and purchase agreement within 45 days from the date of this memorandum. B.B and I.J. upon signing of this memorandum will start immediately register new companies and after registering this companies B.B without any delay will arrange transfer of 62.13% shares of Huta Pokoj. Out of this 62.13% shares I.J. acknowledges that to transfer 12.33% shares required Polish citizen or authorization of Polish interior Ministry. B.B. declares that all 62.13% are under his control. B.B. agrees that if in future for any reason from the past companies mentioned above will loose any ownership or will have to satisfy any claims B.B. will take responsibility up to the amount paid as a purchase price by I.J. If in the future B.B. or I.J. will purchase any additional shares of Huta Pokoj both sides obliged to transfer this shares proportionally in to the partnership.

1.5 This memorandum coming in to force upon providing by I.J. shareholder loan of USD 3,100,000 (three million one hundred thousand) to companies controlled by B.B. as described in memorandum # 2. This shareholder loan will be converted as a part of purchase price for the companies mentioned in paragraph 1. The remaining payment of USD 6,900,000 (six million nine hundred thousand) will be paid from the first profits of I.J., unless I.J. will decide to pay the balance of USD 6,900,000 (six million nine hundred thousand) before the profits mentioned in memorandums #1 and # 2. If no profits will

EXHIBIT E

be made in the companies mentioned in **memorandums # 1 and # 2** then payment for
the companies mentioned in paragraph 1 will be extended until such profits or income
will cover balance of the purchase price of USD 6,900,000 (six million nine hundred
thousand).

## MEMORANDUM OF UNDERSTANDING # 2

2   B.B. agrees, that I.J. after signing of this memorandums will become partner in the other
companies owned by B.B as described below in the condition of partnership.
Companies owned by B.B. are as follows:
a.   Ferro Alloy plant in USA, by name Highlanders Alloys. 100%.
b.   Manganese Mine in Namibia by name Purity Manganese. 100%
c.   Manganese Mine in South Africa by name Rahida Investments. 100%.
d.   All the affiliated companies.

Conditions of the partnership in the companies mentioned in paragraph 2 are as follow:

2.1 Entering in to partnership will complete only after I.J. will provide to the companies
mentioned in paragraph 2 within 30 days from the date of this memorandums
shareholder loan of USD 3,100,000 (three million one hundred thousand) and after the
full settlement of the debts and obligations by means that no obligation or any claims will
remain for any partnership in the companies mentioned in paragraph 2 by the creditor and
right holder Eli Reifman. B.B. will use all the efforts to settle with Eli Reifman after
sufficient capital will be generated to pay out. In between companies will be ruled as a
partnership as intended in this memorandum.

2.2 After providing shareholder loan and settling of the debts and obligations mentioned in
paragraph 2.1 B.B. will transfer to   I.J. 20% of the shares from companies 100% shares
mentioned in paragraph 2.

2.3 To the best knowledge of B.B. estimated debts of the companies are approximately as
follows:

| | |
|---|---|
| a. Eli Reifman | USD- 12,000,000 |
| b. Shlomo Biniashvili | USD- 700,000 |
| c. Merabi, Rami and Demuri Biniashvili | USD - 1,000,000 |
| d. Moshe Zoitman | USD- 1,100,000 |
| e. Ilia Iosebashvili | USD- 300,000 |
| f. Temuri Iosebashvili | USD- 500,000 |
| g. Itzhak Bannai | USD- 1,500,000 |
| h. Jacob Binson up to September 06, 2004 | USD- 1,100,000 |
| i. Boris Bannai | USD- 9,000,000 |
| j. Highlanders Alloys creditors | USD- 3,000,000 |
| k. Purity Manganese creditors | USD- 500,000 |
| l. Rahida Investment creditors | USD- 500,000 |
| m. Debt for Huta | USD- 5,200,000 |
| n. Others | USD- 1,000,000 |
| **TOTAL ESTIMATED DEBTS** | **USD-37,400,000** |

2.4 B.B. and J.B. agreed that from the profits of the companies first will be generated
sufficient working capital of minimum USD 10,000,000, then will resolve all obligations

mentioned in paragraph 2.1, then will be repaid all outstanding debts mentioned in paragraph 2.4 and then profits will be shared as 80% to B.B and 20% to I.J.

2.5 I.J. will have in the companies mentioned in paragraph 2 minority rights according US or Israeli corporation law.

2.6 I.J. will not have any rights to sell or pledge any shares of the companies mentioned in paragraph 2 without agreement of B.B. B.B has the right to sell or pledge the shares if the price offered for the shares by potential purchaser or credit provider will be not less then USD 100,000,000 (One hundred million US Dollars) value of the 100% companies shares. In the event, that B.B. will decide to sell or pledge is own 80% shares or part of it of the companies mentioned in paragraph 2, first he has to offer the same price and condition to the I.J. that potential purchaser or credit provider agrees to. If I.J. will refuse to purchase offered shares or to provide credit, then he has the right to sell or to pledge his own shares proportionally (B.B.80%-I.J.20%) with B.B. to the potential purchaser or credit provider.

2.7 Upon signing of this memorandums the memorandum dated September 6, 2004 are canceled.

3. In case of dispute between the parties regarding this document, its interpretation or its performance, the parties shall nominate third party as an arbitrator.

B.B _____
Boris Bannai

I.J. _____
Jacob Binson

I.J. _____
Itzhak Bannai

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA

JACOB BINSON and ITZHAK BANNAI,

Plaintiffs,

v.                                                          CIVIL ACTION NO. 04-C-196

AMERICAN ALLOYS, INC.,
INDUSTRIAL DEVELOPMENT, LLC,
HIGHLANDERS ALLOYS, LLC,
GLOBAL INDUSTRIAL PROJECTS, LLC,
BORIS BANNAI, individually and as a stockholder
and/or officer in the foregoing corporations, and
ALL CRANE RENTAL CORPORATION, an Ohio Corporation,
AGGREKO, INC., a Louisiana Corporation,
AIR EQUIPMENT SALES AND SERVICE, INC., a
Kentucky Corporation,

Defendants.

## ANSWER AND COUNTERCLAIM

COME NOW, Defendants, Highlanders Alloys, LLC, Industrial Development, LLC, Global

Industrial Projects, LLC, and Boris Bannai, by counsel Mark A. Ferguson and the firm Sprouse &

Ferguson, PLLC, and Gary A. Collias, and file this Answer and Counterclaim to the Amended

Complaint herein filed as follows:

## ANSWER

1.      In response to Paragraph 1 of the Amended Complaint ("Complaint"), Defendants

admit the allegations stated therein and states that the aforesaid Agreement speaks for itself.

2.    Defendants deny the allegations set forth in Paragraph 2 of the Complaint and demand strict proof thereof.

3.    Upon information and belief, Defendants admit the allegations contained in Paragraph 3 of the Complaint.

4.    Defendants deny the allegations set forth in Paragraph 4 of the Complaint and demand strict proof thereof.

5.    In response to Paragraph 5 of the Complaint, Defendants state that Bannai drafted the aforesaid Agreements in conjunction with and following negotiations with Binson and Itzhak Bannai.

6.    Defendants deny the allegations set forth in Paragraph 6 of the Complaint and demand strict proof thereof.

7.    Defendants neither admit nor deny the allegations contained in Paragraph 7 of the Complaint, in that the parties identified therein have been dismissed with prejudice.

8.    Defendants deny the allegations contained in Paragraph 8 of the Complaint and demand strict proof thereof.

9.    Defendants admit the allegations contained in Paragraph 9 of the Complaint.

10.    Defendants deny the allegations contained in the Paragraph 10 of the Complaint and demand strict proof thereof.

11.    Defendants deny the allegations contained in Paragraph 11 of the Complaint and demand strict proof thereof.

12.     In response to the allegations contained in Paragraph 12 of the Complaint, Defendants state that Bannai's letter speaks for itself, and that Plaintiffs are in clear default of the terms of the Agreement, and deny all other allegations contained therein.

13.     In response to the allegations contained in Paragraph 13 of the Complaint, Defendants admit that Binson failed to comply with the terms of the Agreement, but deny that such actions were reasonable or not in violation of such Agreement.

14.     Defendants admit the allegations contained in Paragraph 14 of the Complaint.

15.     Defendants deny the allegations contained in Paragraphs 15 through 18 of the Complaint and demand strict proof thereof.

16.     Defendants deny all other allegations contained in the Complaint not otherwise specifically admitted herein, and demand strict proof thereof.

## AFFIRMATIVE DEFENSES

### First Defense

Plaintiffs' Complaint fails to state a claim against Defendants upon which relief can be granted, and thus must be dismissed pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.

3

### Second Defense

Plaintiffs' claims are barred or limited due to Plaintiffs' comparative or contributory negligence and fault, which proximately caused or contributed to damages of which Plaintiffs complain and which negligence equaled or exceeded any alleged negligence of Defendants.

### Third Defense

Any damages of which Plaintiffs complain were the result of acts or omissions of a party other than Defendants.

### Forth Defense

Plaintiffs' Complaint fails to name necessary and indispensable parties in whose absence complete relief cannot be accorded.

### Fifth Defense

To the extent Plaintiffs allege facts giving rise to any claim for damages, Plaintiffs have failed in its duty to mitigate such damages.

### Sixth Defense

Plaintiffs' claims are barred by the applicable statute of limitations.

### Seventh Defense

Defendants plead the doctrines of accord and satisfaction, failure of consideration, estoppel, payment, laches, license, release, waiver, consent, statute of fraud, parole evidence rule, collateral and any and all affirmative defenses under Rule 8(c) of the West Virginia Rules of Civil Procedure.

4

## Eighth Defense

Defendants reserve the right to assert any defenses asserted by any other party, not inconsistent with Defendants' position, or which discovery may reveal appropriate.

## COUNTERCLAIM

COME NOW Defendants and for their Counterclaim against Plaintiffs state as follows:

## INTRODUCTION

1.      In October 2004, Binson and Itzhak (collectively, "Plaintiffs") attempted to mount a de facto hostile takeover of Highlanders and other related entities involved in the mining, processing and marketing of manganese ores, manganese alloys and steel (the "Products"), against their founder Dr. Boris Bannai ("Bannai").

2.      Plaintiffs sought to take for themselves in breach of their contractual obligations, their implied contractual duty of good faith and fair dealing and their fiduciary obligations of care, loyalty and good faith, control over Highlanders and its manganese alloy plant in West Virginia, the manganese ore mines in Namibia and South Africa and a steel plant in Poland.

3.      Through a deliberate, well thought out plan that almost succeeded, Plaintiffs entered a written agreement with Bannai, undertaking to provide much needed funds in the amount of $3.1 million for the operation of Bannai's businesses. Plaintiffs had prior knowledge that those funds were crucial to the operation of Bannai's businesses and that failing to provide these funds as they

become due, would force Highlander in an extremely precarious position, thereby leaving Plaintiffs

in an extremely strong ability to seek to wrest control of the businesses.

    4.    Plaintiffs were equally aware of the fact, which Bannai explicitly declared it in the

terms of the written agreement between the parties, that Bannai had an agreement to transfer to a

previous Israeli investor, Eli Reifman ("Reifman"), 33% of the manganese ore and alloy businesses,

which was replaced by an agreement to repay Reifman's prior investment, and that as a result Bannai

would not be able to transfer any ownership to Plaintiffs before Reifman's funds were repaid.

    5.    With these facts in mind, Plaintiffs intentionally placed Bannai in a situation where

he was solely reliant on the investment Plaintiffs promised to make, when in actual fact they had no

intention to fulfill these obligations, but rather intended to wrest control over Highlanders, and

related entities involved in the mining, processing and marketing of Products. Plaintiffs intended

to withhold their full investment at the most crucial time and thereby use to their benefit the severe

financial jeopardy that the operations would suffer due to cash flow shortfalls caused by Plaintiffs

wrongful conduct.

    6.    Bannai was aware of the risk that he could lose the control over his businesses if he

had agreed to transfer the 20% ownership to Plaintiffs before Reifman's creditors rights (originating

from his converted former 33% equity investment ) was canceled by payment. It was for that reason

that Bannai expressly stipulated in the written agreements, that even after Plaintiffs had fulfilled their

obligation to make the full cash payment they would still not be entitled to actual equity ownership

until Reifman was fully repaid. This was of crucial importance, since, had Bannai agreed to transfer 20% ownership to Plaintiffs prior to redeeming Reifman's creditors rights, Bannai might have been exposed to a legal risk of being placed in a position of minority ownership of his own businesses, which possibility he was not willing to risk.

7.     Therefore, all agreements with Plaintiffs expressly and unambiguously required that Reifman's investment had to be fully repaid before Bannai would have any obligation to transfer ownership to Plaintiffs.

8.     Contrary to Plaintiffs explicit contractual agreements, Plaintiffs failed to make the required cash payment of $3.1 million, thereby placing the Manganese Operations, including the operation of the plant in West Virginia in serious financial jeopardy, and Plaintiffs further demanded, wrongfully and in breach of their express written contract that Bannai shall transfer their claimed 20% equity ownership notwithstanding that the express and bargained for preconditions to such transfer had not been satisfied (thus potentially putting Bannai at material risk of losing control of his business).

9.     Plaintiffs wrongfully schemed to unilaterally change the terms of their written agreement and extort more favorable conditions, knowing that the operation of the plant was under extreme financial risk and hoping (wrongly as it turned out) that without Plaintiffs' funds Bannai would be so desperate to keep the New Haven plant open that he would cave-in.

7

10. After giving Plaintiffs every opportunity to cease their continuing violations of the agreements and following an unsuccessful final oral discussion with Binson, Bannai terminated the agreement due to Plaintiffs clear breach.

### THE PARTIES

11. Highlanders Alloys, LLC ("Highlanders") is a West Virginia limited liability company with its principal place of business in Mason County, West Virginia.

12. Industrial Development, LLC ("Industrial") is a West Virginia limited liability company with its principal place of business in Mason County, West Virginia.

13. Global Industrial Projects, LLC ("Global") is a West Virginia limited liability company with its principal place of business in Mason County, West Virginia.

14. Boris Bannai ("Bannai") is citizen and resident of Israel, and is the manager of Highlanders, Industrial and Global (the "Companies").

15. Jacob Binson ("Binson"), upon information and belief is a citizen and resident of the State of New Jersey.

16. Itzhak Bannai ("Itzhak") is citizen and resident of the state of Israel.

### FACTUAL BACKGROUND

17. Bannai's businesses are composed of mining operations in Postmasburg (Northern Cape Town Region, South Africa) under the control of South African company named Rahida Investments PTY; mining operations in Otjosondu (Northeast of Windhoek, Namibia's capital)

8

under the control of a Namibia company named Purity Manganese Pty; a processing plant (silicone-manganese production factory) in New Haven, Mason County, West Virginia , and a steel plant, named "Huta Pokoj", in Ruda Slaska, Poland. ("Polish Plant") In addition, there were additional entities involved in the marketing and business operation of the plant in West Virginia, (all collectively referred to as the "Businesses").

18.    In August, 2004, Bannai approached Binson, a cousin of Bannai, with a request for a personal loan. Bannai explained that he has to invest funds in his business activities of ferro-alloys and specifically in activities related to Highlanders' plant in New Haven, West Virginia.

19.    Binson knew Bannai as a family member, and more specifically new about his activities in the ferro alloys field for many years.

20.    On August 2004, Binson agreed to make Bannai a loan, and forwarded to Bannai no more than $950,000 as a personal loan, demanding however to be repaid a premium of $ 1,100,000 as principal and interest. No written loan agreement was drafted as it was a simple transaction, given the prior family relationship between Binson and Bannai and the fact that a number of other family members of Bannai and Binson were loaning moneys to Bannai and receiving interest payments from Bannai, without documentation. (Said further family members are mentioned as creditors in the agreements soon to follow between Bannai and Plaintiffs) It should further be noted that the loan by Binson to Bannai was normal business for Binson as his principal business is a pawn shop and lending business in New Jersey.

9

21. At that time, Highlanders was in the process of a due diligence review conducted by a potential buyer who was negotiating to purchase Highlanders and / or the assets of the plant, with the understanding that when this transaction was complete Bannai would repay Binson the loan plus interest.

22. Shortly after, in early September 2004, days before an agreement was to be finalized for the aforesaid sale of Highlanders or its assets, Binson offered to make a more substantial investment in Bannai's businesses relating to manganese ores, alloys and steel, all due to the potential earnings that Binson foresaw in the businesses.

23. This time Binson would not make a loan but rather a payment of consideration that would potentially evolve, after having met and satisfied certain preconditions (including the redemption of Reifman's rights), into equity interests. Binson further told Bannai that he would like to make his investment together with Bannai's brother, Itzhak Bannai, and that both would be regarded as a single investor.

24. Bannai agreed, and the understanding between the parties was memorialized in an initial written Memorandum of Understanding signed on September 6 2004 ("Initial MOU"). According to the terms of the Initial MOU (attached as Exhibit A), Plaintiffs were required to pay Bannai $10,000,000 within 45 days from the date hereinabove and would have therefore been entitled to acquire: (i) 50% of Bannai's holdings in the Polish Plant and (ii) after certain contractual precondition were to be met, 20% of the holdings in the manganese operations.

10

25.    Article 2.1 of the Initial MOU clearly stated that, in addition to the payment to Bannai, Plaintiffs ownership rights would not mature until after the full settlement of the debts and obligations owed to Reifman.

26.    Article 2.3 stated that the aggregate debts of the manganese operations were in the region of $37,400,000, of which $9,000,000 were owed to Bannai.

27.    Among those creditors identified Subsection (h) of Article 2.3 included the prior loan by Binson in the amount of $1,100,000.

28.    The $10 million payment conditions of Initial MOU were not met by Plaintiffs and shortly thereafter they returned to Bannai and told him that they were unable to raise the required $10 million, and would instead like to work out some other plan to make the investment in a manner that they could afford.

29.    Bannai was disappointed but nevertheless agreed to further negotiations in order to work out some other plan of investment.

30.    Following these further negotiations, the parties reached a new understanding as to the terms of the investment and their understanding was memorized in a new Memorandum Of Understanding dated September 27, 2004 (the "MOU"). a copy of which is attached as Exhibit B.

31.    The New MOU is divided into two separate but interlinked components. The first section deals with the opportunity of Plaintiffs to acquire the 50% in a holding company that would own 62.13% of the Polish Plant stock, for the purchase price of $10 million.

11

32. Under Section I of the MOU, Bannai would transfer 50% of the ownership in the Polish holding company into escrow, to be transferred to Plaintiffs only upon payment of $10 million.

33. However, pursuant to Section 1.5 of the MOU, Plaintiffs rights would only come into force after they made a payment of $3.1 million to Bannai, payable within 30 days from September 27, 2004.

34. Thus, any obligations of Bannai, under Section I of the MOU, would only come into force after Plaintiffs had paid Bannai the required $3.1 million.

35. Section II of the MOU deals with ownership of the manganese operations, excluding the Polish Plant. .

36. Bannai did not need to protect control over the Polish Plant, as with the rest of the Manganese Operations, because the equity in the Polish Plant was purchased by Bannai separately from his arrangement with Reifman. Thus, in order to avoid control battles over the Polish Plant by dealing with other minority shareholders, Bannai would not sell direct equity in the Polish Plant, but rather equity in a holding company, thus maintaining uniform bloc voting of the whole 62.13% ownership unit in the Polish Plant, and enforcing equal rights, all as a final outcome after above process was to be completed.

12

37. The Manganese Operations included related and affiliated companies dealing with the day to day operation of the plant in West Virginia, together with Global and Industrial (a special purpose vehicle established to allow the much needed investment in the plant).

38. Prior to the execution of the Initial MOU and prior to the payment of any funds by Binson, Binson was granted full due diligence opportunities and was made fully aware of the existence, purpose and operations of Highlanders, Industrial and Global. In fact, Binson himself transferred by wire transfers portions of his investment to the accounts of Global, and he was also aware that Plaintiffs were, upon consummation of the preconditions set forth in the MOU, to receive 20% equity in all three of the West Virginia LLCs.

39. Pursuant to the express terms of Section II of the MOU, Plaintiffs thus had the right to acquire their 20% ownership only upon the occurrence of two preconditions. First, Binson must pay in full to Bannai the sum of $3.1 million. Second, the Manganese Operations must repay to Reifman, a total outstanding debt of up to $12 million, to be generated from future operations of the Manganese Operations.

40. Only after both conditions had been fully satisfied would Plaintiffs receive their direct equity ownership of 20% of the Manganese Operations.

41. Plaintiffs were very much aware of these preconditions. In fact, during negotiations Plaintiffs repeatedly requested that the repayment to Reifman should not be a precondition to their equity ownership. However, Bannai firmly objected and also explained to Plaintiffs that any issuance

13

of equity to them before the repayment of Reifman would put Bannai in an unacceptable position of losing potentially control of his business which he could not do.

42.     It is also imported to note that both Plaintiffs pursued continuing extensive due diligence of the Manganese Operations prior to the signing of the Initial MOU and continuing through the signing of the MOU. This included meetings in New York and in Israel, with Sagi Ginzburg Bannai's in-house lawyer, during which Plaintiffs requested and received information related to the extremely volatile position of the plant in West Virginia, information relating to the reorganization of Highlanders and the additional entities of Industrial and Global, formed in order to reopen the plant, information related to the status of legal issues and cases against Highlanders, information related to negotiations with creditors, liens, injunctions of West Virginia Workers Compensation Commission (prior to the payment of debts to them); status of WVDEP permits and fines; copies of Excel files listing various debts and open issues to be addressed and many other confidential and important financial and operational issues.

43.     During September and October 2004, Binson arrived at the New Haven plant for a few weeks, In accordance to the terms of the MOUs, Binson was presented as an investor, and, pursuant to instruction of Bannai, was allowed access to any and all employees at the plant, was allowed access to all files at the plant and received reports of the day to day operation, technical and financial.

14

44.    While at the West Virginia operations, Binson behaved in an extremely unpleasant, rude, insulting and condescending manner towards everyone in the plant, and during the relatively short period of time Binson spent there he managed to offend and upset every single person he met in the plant.

45.    While Binson was invited to be present at the physical operations of the Companies, he did not have any ownership interest or rights and his only involvement, though abused by him, was to be as a passive investor not entitled to be involved in any management or operational aspects of the Manganese Operations.

46.    Binson criticized each and every person in the plant, made general and inappropriate remarks on certain of the employees being stupid in nature, used foul language frequently and in general created an extremely unpleasant work environment.

47.    Binson told any one who would listen that he is not Bannai and he is not a "sucker and idiot" and that, unlike Bannai, nobody will make a fool of him.

48.    Around the plant Binson also behaved in an erratic manner, including banging his hard-hat against tables, and terrorizing employees to the point that they refused to be in the same room with him.

49.    Further, Binson damaged production by interfering in the production process at a time Bannai was absent from the plant.

15

50.     Bannai was upset with Binson's behavior and asked him more than once to cease and
that his behavior was unprofessional and unacceptable. Bannai also asked Binson not to interfere
with operations of the plant, but that he could remain at the plant and receive financial information
he is seeking as a solely passive investor.

51.     During this period Binson asked for and received daily full reports of the finance
status of the companies and the breakdown of debts owed to each creditor.

52.     Binson was thus fully aware of the extremely precarious financial position of the
operations and during his visits witnessed, more than once, temporary shutdown of the furnace and
potential termination of the operation due to cash flow shortfalls.

53.     On or about October 20 2004, only six days before Plaintiffs were committed to make
their final payment of the $3.1 million, both Binson and Itzhak arrived in West Virginia for a joint
visit to the plant.

54.     Up to that point, Bannai had requested from Binson, on a daily basis, to transfer funds
to complete Plaintiffs required investment. Bannai had also explained that the final date to make the
investment was rapidly approaching, only a small portion of the investment had been made so far,
and that the plant was in a serious cash flow crunch making it vital to receive funds without delay.

55.     Binson replied that he had to arrange his finances and that he still did not have the
required funds available.

16

56.    As soon as Itzhak arrived to West Virginia, both Plaintiffs asked to receive a current copy of the full account of current debts of the operations, but nevertheless did not make any additional payment and also refused to commit themselves to when they would have the remaining funds available.

57.    All these parties were scheduled to attend together a large ferroalloys conference in Hollywood, Florida taking place on October 24-26, 2004.

58.    This conference therefore took place on the final date on which Plaintiffs were contractually obligated to complete the full payment to Bannai of additional funds in the amount of about $2 million.

59.    At the end of this conference it become apparent to Bannai that Plaintiffs had no intention to complete their investment, although they were expressly aware that the Manganese Operations were desperate for such funds, and that Bannai had no other available funding or credit source.

60.    During the Florida conference, there was also a disagreeable confrontation between Binson and Bannai as a result of Binson's improper and unprofessional activities whereby he attempted to embarrass Bannai and offend certain customers and colleagues of the Companies.

61.    By the end of the conference Bannai could not obtain any commitment from Plaintiffs as to when they would make the final payment, although the time limit was set to expire.

17

Nevertheless, Bannai told Plaintiffs that he would grant them an extension to pay, until the end of business on October 29, 2004.

62.    Two days later, on October 28, 2004, Bannai received a demand letter by facsimile and email, from Binson, through his counsel, dated October 25, 2004 although this was neither sent nor received until October 28, 2004.

63.    In clear, intentional and willful breach of the express terms of the MOU, Plaintiffs refused to pay funds contractually committed to pay, unless Bannai placed shares into the hands of an escrow agent, and transfer the shares to Binson against a payment of $650,000, a copy of which letter is attached hereto as Exhibit C.

64.    As stated previously, the terms of the MOU stipulated that Plaintiffs were required to make payment of $3.1 million within 30 days of the date, but would not be entitled to equity ownership, until Reifman was repaid.

65.    Through October 25, 2004, Plaintiffs had invested only $1 million (approximately), and they were still committed to invest the remaining $2.1 million, not the $650,000 sum stated by them. Prior to and separate from the MOU Plaintiffs had previously loaned funds to Bannai, in return for which payment Bannai was to repay to Binson the sum of $1,100,000 (a sum that includes interest), much like Bannai's obligation towards other creditors identified in the Memorandum most of which are Bannai and Plaintiffs family members. These earlier loan funds are separate from any amounts to be paid under the MOU and were only to be repaid out of future income generated from

18

the Manganese Operations (excluding the Polish Plant), pursuant to the express terms of Section 2.4 of the MOU.

66.    Bannai realized that Plaintiffs had no intention to invest and that granting additional extensions would not change their actions. Bannai was also now aware of the fact that Plaintiffs are now trying to unilaterally alter the terms of the MOU and extort from him terms that he specifically told them were unacceptable when the MOUs were negotiated and signed.

67.    As a result of all these actions as well as this specific unprofessional and damaging conduct of Binson, it became clear to Bannai that Plaintiffs appeared to be pursuing a different agenda than their purported roll as supporters of the Companies, and were taking actions to undermine and damage the business interest of Bannai and the Companies.

68.    Bannai responded to Plaintiffs demand by letter dated October 29, 2004, a copy of which is attached as Exhibit D, whereby Bannai declared default due to Binson's intentional failure and refusal to provide required funds and his unsuccessful attempt to demand unilateral changes in the contract between the parties, both of which are material and substantial breaches of the conditions of the MOU. Bannai therefore, terminated the contract between the parties and declared it null and void, and also terminated all further rights of Binson and / or Itzhak to any future ownership of the manganese operations

19

69. During the above Itzhak was kept fully informed by Bannai, but because Itzhak was not named as a client of Binson's lawyer, a letter regarding the terminated the contract between the parties was also sent to Itzhak, a copy of which is attached as Exhibit E.

70. Following Plaintiffs' failure and refusal to comply with the express terms of the MOU, the Manganese Operations and specifically the plant in West Virginia were placed in severe financial jeopardy due to cash flow shortfalls, because the contracted for and promised funds to be paid by Plaintiffs were necessary for the successful continuing operation of the operations, as well as the successful continuing resolution of outstanding debt through assignments and agreements that had been entered into between various Highlanders creditors and Industrial.

71. Moreover, good quality manganese ore, vital for the proper and efficient operation of the furnaces in West Virginia, could not have been obtained from Namibia due to shortage of funds, and Bannai thus had no other choice than to continue operating the West Virginia plant with poorer quality manganese ore, for an additional five months period, until he managed to raise funds necessary for the delivery of ore from Namibia.

72. In addition, a major part of the investment was to be used in order to renovate the second furnace in the West Virginia plant ("Furnace No. 2"), and due to the wrongful and tortuous breach of Plaintiffs, Bannai lost five months of production before he managed to raise sufficient funds to renovate and operate Furnace No. 2.

20

73. Plaintiffs failure to comply with the terms of the MOU, and their refusal to make the required payment to Bannai, caused significant financial hardship, cash flow shortfalls, direct loss of revenue and other significant damages to both Bannai and the Companies.

74. The failure and refusal of Plaintiffs to comply with the MOU constitutes significant loss and damage to Bannai and the Companies, both in the United States and in foreign businesses and operations.

75. Notwithstanding the failure and refusal of Plaintiffs to comply with the express terms of the MOU, Bannai has attempted to maintain and operate the Manganese Operations, even though severally crippled by lack of promised funds required to be paid by Plaintiffs.

76. As a result of the absence of Plaintiffs' promised payment, the plant in West Virginia has been unable to increase productivity at a time when product sale prices have been at record highs, resulting in significant loss of profits during the period from October 2004 through March 2005, resulting in a loss of profits of more than $6,000,000.

77. During the period from October 2004 through the present date, global sales price for product produced by the Companies has dropped from more than $1,000 per metric ton ("ton") to approximately $550 per ton, and cash flow shortfalls directly caused by Plaintiffs wrongful and tortious conduct has placed the Manganese Operations in a position where they are unable to take advantage of higher prices prevailing in the market during late 2004.

21

78.     During the period from October 2004 through April 2005, when Bannai finally managed to finance the delivery of high quality manganese ore from Namibia, the plant operated with poorer quality Ore producing a total of 8,000 tons. Had the Namibian manganese ore been available to the plant in November 2004, production would have been higher by 35ton per day and the profit from this operation would have been higher by more than $920,000. In addition, due to the fact that production would have been more efficient and required less electricity for operation of the plant, the net profit on the manufactured 8,000 ton would have been higher by some $150 per ton, resulting in additional lost profit of over $1,200,000 without increase in overhead prices.

79.     The late operation of Furnace No. 2 (adding a capacity of 200 ton per day) by four months resulted loss of revenue of $15,600,000 and estimated loss of profit of more than $3,400,000.

80.     In addition, the wrongful actions of Plaintiffs resulted in direct economic losses for the production of manganese ore at the mining operations in Africa, resulting in an additional loss of more than $6 million, together with additional lost business opportunities and profit potential potentially in excess of $24 million (in excess of said direct loss of $6 million).

### COUNT I

### BREACH OF CONTRACT --
### FAILURE TO PAY CONTRACTUAL PAYMENTS

81.     Defendants restate and incorporate by reference all allegations set forth in Paragraphs 1 through 80, as if fully set forth herein.

22

82.    By its ongoing course of conduct and the actions set forth above, taken singly or in combination, Plaintiffs breached their contractual obligation to pay $3.1 million no later than October 26, 2004, entitling the Defendants to damages, together with interest thereon and other incidental and consequential damages, costs and attorney fees.

## COUNT I I

### BREACH OF CONTRACT --
### FAILURE TO NEGOTIATE IN GOOD FAITH

83.    The Defendants restate and incorporate by reference all allegations set forth in Paragraphs 1 through 82, as if fully set forth herein.

84.    Throughout the course of dealings by Plaintiffs following execution of the MOU, including the letter dated October 25, 2004 (which was actually sent on October 28) attached as Exhibit C, constituted a failure to act and deal in good faith by a party to the contract, and an attempt by Plaintiffs to take advantage of the financial condition of the Manganese Operation and extort more favorable terms than those to which they were contractually entitled under the expressed terms of the MOU, which conduct has resulted in significant and permanent economic loss and damage to the Defendants.

85.    Based on the foregoing, Plaintiffs never indented to negotiate and deal in good faith with Bannai and the Manganese Operations, and did not intend to abide by the express terms of the MOU, all of which resulted in significant loss and damage to Bannai and the Manganese Operations,

23

in excess of $6 million, together with interest thereon, incidental and consequential damages, costs and attorney fees.

## COUNT III

## LOSS OF PROFITS AND BUSINESS OPPORTUNITIES

86. Defendants restate and incorporate by reference all allegations set forth in Paragraphs 1 through 85, as if fully set forth herein.

87. At the time Plaintiffs willfully refused to pay the final amount due under the MOU, they were aware of the precarious cash flow position of the Manganese Operations and specifically the plant in West Virginia, and the fact that these sums were necessary for continued operations, both for purchasing high quality raw materials from Namibia, as well as to begin operations of Furnace No. 2 at the Mason County plant.

88. Due to the loss of these promised funds, the Manganese Operations were unable to finance the importation of higher quality ore, and were unable to begin operations of Furnace No. 2.

89. Due to the lack of the second operating furnace, the direct per ton costs of the Manganese Operations were significantly higher, resulting in overall lack of profitability, causing the Companies to suffer direct losses of more than $3 million for the period November 2004 through March 2005, and continuing in the future.

24

90. During the same time period of November 2004 through March 2005, market prices for manganese alloy dropped significantly, from a range of more than $1,000 per ton to approximately $550 per ton. As the market price trended down during this period, the lack of the second operating furnace significantly reduced the overall alloy production for the Companies, from an expected average of 8,000 tons per month to an actual production of less than 2,500 tons per month.

91. As a result of the reduction in productivity due to the withholding of funds by Plaintiffs the Manganese Operations suffered a loss of tonnage production during this period of more than 23,000 tons.

92. In addition to increased production costs from lower productivity, the reduction in market prices caused a direct economic loss of more than $4 million based on the excess tonnage that could not be produced with the second furnace, as well as an operational jig plant.

93. Additionally, the Companies faced losses due to additional interest and late payment fees and penalties with regard to settlements of various Highlanders creditors, which settlement payments had to be significantly deferred, resulting in significant direct economic losses to the Companies.

94. Such additional interest included that imposed by Siemens, an assignor of a claim against Highlanders, resulting in the unplanned payment of the sum of $41,500, which constitutes

25

an out of pocket drain on cash flow, which had to be paid at a time of financial distress, further costing profits to the Manganese Operations.

95. The Companies also suffered significant losses due to the inability, because of the cash flow crises engineered by Plaintiffs to purchase high quality ore from Africa. The resulting lower quality ore resulted in increased production costs and lower revenue generated from sales of alloy by the Companies, resulting in direct economic losses in excess of $ 2,200,000.

96. In addition to the aforesaid economic losses, the willful failure of Plaintiffs to comply with the contractual terms of the MOU forced Bannai and the Manganese Operations to constantly operate in a precarious financial position damaging their future viability and profitability, as well as their business reputation.

97. All of the aforesaid losses were direct economic losses suffered by the Companies as a direct and approximate result of Plaintiffs willful and tortuous refusal to act in good faith and comply with the terms of the MOU and make the required payments to Bannai, and aforesaid losses are only for the period through March 2005, all of which losses are continuing and shall continue in the future to cause significant direct economic loss and damage to Bannai and the Manganese Operations.

## COUNT IV

### FRAUDULENT MISREPRESENTATION AND DECEIT

26

98.    Defendants restate and incorporate by reference all allegations set forth in paragraphs 1 through 97, as if fully set forth herein.

99.    As a result of Plaintiffs' refusal to pay amounts due under the MOU, and their wrongful actions in attempting to extort more favorable terms than their contractually agreed to by the parties, Plaintiffs have deprived Bannai and the Companies of other potential business opportunities.

100.    Such conduct constitutes intentional interference with contractual relationships of the Defendants, which interference has caused loss and economic damage to Defendants, all of which were done willfully, intentionally and tortiously by Plaintiffs, without privilege of lawful justification and for the purpose of harming and damaging Defendants.

COUNT V

BREACH OF THE CONTRACTUAL DUTY OF GOOD FAITH AND FAIR DEALING

101.    Defendants restate and incorporate by reference all allegations set forth in paragraphs 1 through 100, as if fully set forth herein.

102.    The contractual duty of good faith and fair dealing is implicit in every contract, including the Initial MOU and the MOU.

27

103. If and to the extent any of Plaintiffs' acts and omissions are found for any reason not to breach the express terms of the contract, they nevertheless constitute breach of the implied contractual duties of good faith and fair dealing under the terms of the MOU.

104. By its course of conduct and the actions set forth above, taken singly or in combination, Plaintiffs intentionally acted in bad faith, without legitimate justification and in a manner that had both the intent and effect of injuring and/or destroying Bannai and the Manganese Operations, by denying them the benefit of their contractual rights.

105. Bannai and the Manganese Operations have suffered damage and injury as a proximate result of these breaches by Plaintiffs.

### COUNT VI

### PUNITIVE DAMAGES

106. Defendants restate and incorporate by reference all allegations set forth in paragraphs 1 through 105.

107. The aforesaid actions of Plaintiffs, were done willfully, intentionally, recklessly and maliciously, without privilege or lawful justification, for the purpose of causing harm to Defendants and to further the interest of Plaintiffs, without regard to the rights of Bannai or the Companies or the lawfulness of Plaintiffs' conduct.

28

108.    As a direct result of Plaintiffs' willful and malicious actions, breach of contract, misrepresentations and omissions, Defendants are entitled to punitive damages, and hereby request same.

DEMAND FOR RELIEF

WHEREFORE, Defendants demand judgment against Jacob Binson and Itzhak Bannai, jointly and severally, for all compensatory damages, punitive damages and all other damages available under applicable law, including pre-judgement interest, post-judgement interest, costs, attorneys fees, and such further relief is just and proper.

DEMAND FOR JURY TRIAL

Defendants hereby demand trial by jury.

INDUSTRIAL DEVELOPMENT, LLC,
HIGHLANDERS ALLOYS, LLC,
GLOBAL INDUSTRIAL PROJECTS, LLC,
and BORIS BANNAI
Defendants
By Counsel

Mark A. Ferguson
SPROUSE & FERGUSON, PLLC
230 Capitol Street, Suite 300
Charleston, West Virginia 25301
(304) 342-9100
WV Bar #1182

29

_Guy A. Collias_ /HAF

Gary A. Collias, Esquire
P.O. Box 70007
Charleston, West Virginia 25301-0007
(304) 344-3653
WV Bar #784

Counsel for Defendants

30

IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA

JACOB BINSON and ITZHAK BANNAI,

Plaintiffs,

vs.                                                    Civil Action No. 04-C-196

AMERICAN ALLOYS, INC.,
INDUSTRIAL DEVELOPMENT, LLC,
HIGHLANDERS ALLOYS, LLC,
GLOBAL INDUSTRIAL PROJECTS, LLC,
BORIS BANNAI, individually and as a stockholder
and/or officer in the foregoing corporations, and
ALL CRANE RENTAL CORPORATION, an Ohio Corporation,
AGGREKO, INC., a Louisiana Corporation,
AIR EQUIPMENT SALES AND SERVICE, INC., a
Kentucky Corporation,

Defendants.

CERTIFICATE OF SERVICE

Mark A. Ferguson and Gary A. Collias, counsel for Defendants do hereby certify that the foregoing ANSWER AND COUNTERCLAIM has been served upon counsel of record as indicated below by mailing a true and exact copy thereof to:

R. Michael Shaw, Esquire
Shaw & Tatterson, L.C.
610 Main Street
Point Pleasant, West Virginia 25550

31

in a properly stamped and addressed envelope, postage prepaid, and depositing the same in the

regular course of the United States mail this 21st day of April, 2005.

_____

Mark A. Ferguson

32



Date, September, 6, 2004
## MEMORANDUM OF UNDERSTANDING

Boris Bannai (B.B.) from one side and Jacob Binson and Itzhak Bunnai (I.J.) from the other side agreed as follows:

1  B.B. will sell and I.J. will purchase 50% of the companies shares, which companies together will own 62.13% shares of the Steel Plant in Poland by the name "Huta Pokoj" S.A. ul. Niedurnego 79, 41-709 Ruda Slaska, for the price of USD 10,000,000 (ten million US Dollars) with the following conditions:

1.1 Against payment of the purchase price in the companies mentioned in paragraph 1 B.B. will transfer to I.J. 50% of the companies shares and B.B and I.J. will have equal rights (50%-50%).

1.2 B.B. and I.J. will not have any rights to sell or pledge any shares of the companies mentioned in paragraph 1 without agreement of 100% shareholders, if the price offered for the purchased shares by potential purchaser or credit provider will be less then USD 100,000,000 (One hundred million US Dollars) value of the company Huta Pokoj.

1.3 In the event, that any side of this memorandum will decide to sell or pledge the shares of the companies mentioned in paragraph 1, first he has to offer the same price and condition to the other side, that potential purchaser or credit provider agrees to. If the other side will refuse to purchase offered shares or to provide credit, then he has the right to sell or to pledge his own shares in equal proportion with the other side to the potential purchaser or credit provider.

1.4 I.J. undertakes and guarantees to pay above-mentioned price of USD 10,000,000 (ten million US Dollars) within 45 days from the date of this memorandum, subject to due diligence that shall satisfy I.J. in his own and full discretion. For the due diligence B.B. to his best knowledge will submit all required documents to I.J and if I.J. within 45 days will not finalize the purchase and will not pay to B.B. the purchase price of USD 10,000,000 (ten million US Dollars) this memorandum become non-binding, noel and void.

1.5 B.B. and I.J. guaranteeing to enter in to final sell and purchase agreement within 21 days from the date of this memorandum. B.B upon signing of this memorandum will start immediately register new companies and after registering this companies B.B without any delay will arrange transfer of 62.13% the shares of Huta Pokoj. Out of this 62.13% shares I.J. acknowledges that to transfer 12.33% shares required Polish citizen or authorization of Polish interior Ministry. B.B. declares that all 62.13% are under his control. B.B. agrees that if in future for any reason from the past companies mentioned above will loose any ownership or will have to satisfy any claims B.B. will take responsibility up to the amount paid as a purchase price by I.J.

2  Conditional to finalization of the above mentioned sell-purchase agreement including the payment by I.J. of USD 10,000,000 (ten million US Dollars); B.B. agrees, that I.J. will become partner in the other companies owned by B.B.
Companies owned by B.B. are as follows:



04/20/2005 21:43 FAX 13048822503 GLOBAL INDUSTRIAL PROJEC @002/006

12-APR-2235 16:51 From:G I P 972 3 5258127 To:13048822583 P.2/15

a. Ferro Alloy plant in USA, by name Highlanders Alloys. 100%.
b. Manganese Mine in Namibia by name Purity Manganese. 100%
c. Manganese Mine in South Africa by name Rahida Investments. 100%.
d. All the affiliated companies.

Conditions of the partnership in the companies mentioned in paragraph 2 are as follow:

2.1 The partnership will resume only after the full settlement of the debts and obligations by means that no obligation or any claims will remain for any partnership in the companies mentioned in paragraph 2 by the creditor and right holder Eli Reifman.

2.2 B.B agrees that, minimum USD 8,500,000 out of received USD 10,000,000 from the sell of the Huta Pokoj shares will provide to the partnership as a shareholder loan. Besides the above mentioned, B.B. is obligated to transfer from the companies account mentioned in paragraph 2 sum of USD 1,000.000 to Iizhak Bannai as a part of companies debt repayment.

2.3 After settling of the debts and obligations mentioned in paragraph 2.1 B.B. will transfer to I.J. 20% of the shares from the company, in witch company will be transferred all mentioned in paragraph 2 companies 100% shares.

2.4 To the best knowledge of B.B. estimated debts of the companies are approximately as follows:

| | |
|---|---|
| a. Eli Reifman | USD - 12,000,000 |
| b. Shlomo Biniashvili | USD - 700,000 |
| c. Merabi, Rami and Demuri Biniashvili | USD - 1,000,000 |
| d. Moshe Zoitman | USD - 1,100,000 |
| e. Ilia Iosebashvili | USD - 300,000 |
| f. Temuri Iosebashvili | USD - 500,000 |
| g. Itzhak Bannai | USD - 1,500,000 |
| h. Jacob Binson | USD - 1,100,000 |
| i. Boris Bannai, excluded new loan | USD - 9,000,000 |
| j. Highlanders Alloys creditors | USD - 3,000,000 |
| k. Purity Manganese creditors | USD - 500,000 |
| l. Rahida Investment creditors | USD - 500,000 |
| m. Debt for Huta | USD - 5,200,000 |
| n. Others | USD - 1,000,000 |
| TOTAL ESTIMATED DEBTS | USD-37,400,000 |

2.5 B.B. and J.B. agreed that from the profits of the companies first will be generated sufficient working capital of minimum USD 10,000,000, then will be resolved all obligations mentioned in paragraph 2.1, then will be repaid all outstanding debts mentioned in paragraph 2.4 and then profits will be shared as 80% to B.B and 20% to I.J.

2.6 In case of selling of the companies mentioned in paragraph 2 or each part of it, I.J. shall be entitled, from the day of signature of this document, to receive its part of 20% from the selling.

2.7 In case of negotiation regarding the companies sales or pledges mentioned in paragraph 1 and 2, or any part of it, B.B. and I.J. shall be involved jointly in the actual negotiations.

J.B.

2.8  In case of dispute between the parties regarding this document, its interpretation or its
performance, the parties shall nominate third party as an arbitrator.

B.B
Boris Bannai

I.J
Jacob Binson

I.J.
Izhak Bannai

"EXHIBIT A"

FROM :                            FAX NO. :            Nov. 03 2004 01:51PM P3

Date, September, 27, 2004
MEMORANDUM OF UNDERSTANDING # 1

Boris Bannui (B.B.) from one side and Jacob Binson and Itzhak Bannai (I.J ) from the
other side agreed us follows.

1  B.B. will sell and I.J. will purchase 50% of the companies shares, which companies
together will own 62.13% shares of the Steel Plant in Poland by the name "Huta Pokoj"
S.A. ul. Niedungego 79, 41-709 Ruda Slaska, for the price of USD 10,000,000 (ten
million US Dollars) (purchase price) with the following conditions:

1.1 The payment of purchase price will be made by I.J. within three years from the date of
this memorandum. Upon coming in to force of this memorandum B.B and I.J. will
have equal rights (50%-50%) in the companies mentioned in paragraph 1 of this
memorandum.

1.2 B.B. will transfer to trustee mutually appointed between B.B. and I.J. 50% of the shares
(subject of this memorandum) with the agreement that trustee will transfer the shares to
I.J. after payment of USD 10,000,000 (ten million US Dollar).

1.3 I.J. will not have any rights to sell or pledge any shares of the companies mentioned in
paragraph 1 without agreement of B.B. B.B has the right to sell or pledge the shares if
the price offered for the shares by potential purchaser or credit provider will be not less
then USD 100,000,000 (One hundred million US Dollars) value of the 100% companies
shares. In the event, that B.B. will decide to sell or pledge is own 50% shares or part of it
of the companies mentioned in paragraph 1, first he has to offer the same price and
condition to the I.J. (hat potential purchaser or credit provider agrees to. If I.J. will refuse
to purchase offered shares or to provide credit, then he has the right to sell or to pledge
his own shares in equal proportion with B.B. to the potential purchaser or credit provider.

1.4 B.B. and I.J. guaranteeing to enter in to final sell and purchase agreement within 45 days
from the date of this memorandum. B.B and I.J. upon signing of this memorandum will
start immediately register new companies and after registering this companies B.B
without any delay will arrange transfer of 62.13% shares of Huta Pokoj. Out of this
62.13% shares I.J. acknowledges that to transfer 12.33% shares required Polish citizen or
authorization of Polish Interior Ministry. B.B. declares that all 62.13% are under his
control. B.B. agrees that if in future for any reason from the past companies mentioned
above will loose any ownership or will have to satisfy any claims B.B. will take
responsibility up to the amount paid as a purchase price by I.J If in the future B.B. or I.J.
will purchase any additional shares of Huta Pokoj both sides obliged to transfer this
shares proportionally in to the partnership.

1.5 This memorandum coming in to force upon providing by I.J. shareholder loan of USD
3,100,000 (three million one hundred thousand) to companies controlled by B.B. as
described in memorandum # 2. This shareholder loan will be converted as a part of
purchase price for the companies mentioned in paragraph 1. The remaining payment of
USD 6,900,000 (six million nine hundred thousand) will be paid from the first profits of
I.J. unless I.J. will decide to pay the balance of USD 6,900,000 (six million nine hundred
thousand) before the profits mentioned in memorandums #1 and # 2. If the profits will

be made in the companies mentioned in memorandums # 1 and # 2 then payment for the companies mentioned in paragraph 1 will be extended until such profits or income will cover balance of the purchase price of USD 6,900,000 (six million nine hundred thousand).

## MEMORANDUM OF UNDERSTANDING # 2

2   B.B. agrees. that I.J. after signing of this memorandums will become partner in the other companies owned by B.B as described below in the condition of partnership.

Companies owned by B.B. are as follows:

a.   Ferro Alloy plant in USA, by name Highlanders Alloys. 100%.
b.   Manganese Mine in Nemibia by name Purity Manganese. 100%
c.   Manganese Mine in South Africa by name Rahida Investments. 100%.
d.   All the affiliated companies.

Conditions of the partnership in the companies mentioned in paragraph 2 are as follow:

2.1   Entering in to partnership will complete only after I.J. will provide to the companies mentioned in paragraph 2 within 30 days from the date of this memorandums shareholder loan of USD 3,100,000 (three million one hundred thousand) and after the full settlement of the debts and obligations by means that no obligation or any claims will remain for any partnership in the companies mentioned in paragraph 2 by the creditor and right holder Eli Reifman. B.B. will use all the efforts to settle with I b Reifman after sufficient capital will be generated to pay out. In between companies will be ruled as a partnership as intended in this memorandum.

2.2   After providing shareholder loan and settling of the debts and obligations mentioned in paragraph 2.1 B.B. will transfer to  I.J. 20% of the shares from companies 100% shares mentioned in paragraph 2.

2.3   To the best knowledge of B.B. estimated debts of the companies are approximately as follows:

| | |
|---|---|
| a. Eli Reifman | USD - 12,000,000 |
| b. Shlomo Biniashvili | USD- 700,000 |
| c. Merabi, Rami and Deroun Biniashvili | USD - 1,000,000 |
| d. Moshe Zoitman | USD- 1,100,000 |
| e. Ilia Iosebashvili | USD- 300,000 |
| f. Temuri Iosebashvili | USD 500,000 |
| g. Itzhak Bannai | USD- 1,500,000 |
| h. Jacob Binson up to September 06, 2004 | USD- 1,100,000 |
| i. Boris Bannai | USD- 9,000,000 |
| j. Highlanders Alloys creditors | USD- 3,000,000 |
| k. Purity Manganese creditors | USD- 500,000 |
| l. Rahida Investment creditors | USD- 500,000 |
| m. Debt for Huta | USD- 5,200,000 |
| n. Others | USD- 1,000,000 |
| TOTAL ESTIMATED DEBTS | USD-37,400,000 |

2.4   B.B. and J.B. agreed that from the profits of the companies first will be generated sufficient working capital of minimum USD 10,000,000. then will ..... all obligations

mentioned in paragraph 2.1, then will be repaid all outstanding debts mentioned in
paragraph 2.4 and then profits will be shared as 80% to B.B and 20% to I.J.

2.5 I.J. will have in the companies mentioned in paragraph 2 minority rights according US or
israeli corporation law

2.6 I.J. will not have any rights to sell or pledge any shares of the companies mentioned in
paragraph 2 without agreement of B.B. B.B has the right to sell or pledge the shares if the
price offered for the shares by potential purchaser or credit provider will be not less than
USD 100,000,000 (One hundred million US Dollars) value of the 100% companies
shares. In the event, that B.B. will decide to sell or pledge is own 80% shares or part of it
of the companies mentioned in paragraph 2, first he has to offer the same price and
condition to the I.J. that potential purchaser or credit provider agrees to. If I.J. will refuse
to purchase offered shares or to provide credit, then he has the right to sell or to pledge
his own shares proportionally (B.B.80%-I.J.20%) with B.B. to the potential purchaser or
credit provider.

2.7 Upon signing of this memorandum the memorandum dated September 6, 2004 are
canceled.

3) In case of dispute between the parties regarding this document, its interpretation or its
performance, the parties shall nominate third party as an arbitrator.

B.B. _____            I.J. _____
      Boris Bannai                       Jacob Binson

                                   I.J. _____
                                         Itzhak Bannai

31-MAR-2005 15:53 From:G I P          972 3 5200127          To:13040022503          P.2/5

JAY I. LAZEROWITZ
ATTORNEY AT LAW
55 HARRISTOWN
GLEN ROCK, NEW JERSEY 07452
(201) 670-6944
FAX (201) 670-6332

October 25, 2004

Mr. Boris Bannai
By Fax 304-353-3722 (at Marriott Hotel)
and Email - Boris_Bannai@yahoo.com

Re: Jake Binson

Dear Mr. Bannai:

I represent Jake Binson, in connection with his purchase of 20% of Highlander Alloys.

Pursuant to the terms of the Memorandum Agreement, you are required to deliver to my
client 20% of your 100% of the outstanding shares of Highlander Alloys, upon full
payment of the purchase price. Mr. Binson wants to immediately remit his final payment
of $650,000, as agreed. In order to make the final payment, I need copies of the shares to
be issued and proof that these shares have been placed into the hands of a licensed West
Virginia Attorney, as escrow agent. Further, I require proof that you are the owner of all
of the outstanding shares and that there are no other shareholders.

Please advise and comply with these requirements no later than 5pm on November 1,
2004.

Very truly yours,

Jay I. Lazerowitz



06/01/2005  01:49  304-342-9119  SPROUSE & FERGUSON  PAGE  41/42
Case 3:05-bk-30516  Doc 10-1  Filed 06/06/05  Entered 06/06/05 11:44:54  Desc
Exhibit  Page 103 of 115

31-MAR-2005 15:53 From:G I P  972 3 5280127  To:13048822503  P.3/5

October 29, 2004

Jay I. Lazerowitz, Esq.

55 Harristown  *By Certified Mail, Fax (201) 670-6332*
Glen Rock  *and email: lazerlawus@aol.com*
New Jersey, 07452

Re: Your letter dated October 25, 2004 on behalf of Mr. Jack Binson

Dear Mr. Lazerowitz:

Your above mentioned letter presents an inaccurate reading, to say the least, of the Memorandum of Understanding of September 27, 2004.

Mr. Jacob Binson and Mr. Itzhak Bannai ("Counterparty"), the counter party to said Memorandum, have materially failed to live-up to their commitment to make a loan.

Pursuant to Counter Party representations and signed Memorandum, moneys due under the Memorandum were relied on and a financial plan was made and executed to the extent made possible given Counter Party's decision to default on its commitment.

Significant funds and efforts have been invested relying in good faith on the written word of Counter Party.

Significant damages are expected due to the sudden lack of funding at this vulnerable stage, all of which Counter Party is well aware of.

According to said Memorandum Counter Party was to complete furnish of said loan by October 26, 2004. Though over due, several verbal requests to make payment of the outstanding balance on the loan to be furnished were made, both to Jacob Binson and to Itzhak Bannai. Finally, a deadline for said payment, by the end of business October 29, 2004, was presented in an attempt to allow Counterparty to correct its failure, live up to its commitment and minimize damages.

Regretfully counter Party chose to default.

It is therefore that I hereby declare and record that said Memorandum did not come into effect and is now null and expired (no further extension of term is granted), due to failure of Counterparty to bring said Memorandum into effect in a timely fashion.

Alternatively, for the sake of caution, should said Memorandum be (wrongfully) deemed in-effect at any past point in time, I hereby void said Memorandum, effective immediately, due to material default of Counterparty.

I reserve all rights to collect all damages caused by Counterparty's conduct.

On a personal note I wish to state and hold my deepest disappointment of Counterparty's attempt to exploit and abuse a temporary cash-flow weakness to change the agreed upon, already discounted, terms.

Sincerely,

Boris Bannai

CC:  Jacob Binson  by Faxes: 1 718 871 3631, 1 973 287 4159
     Itzhak Bannai  by emails: ubaconet@yahoo.com, netspace007@yahoo.com &
                    Fax: +972 3 585 2076



October 29, 2004

Mr. Itzhak Bannai

Jabotinsky 3a                 *By Certified Mail, Fax +972 3 585 2076*
Tel Aviv 52521               *and emaisl: ubeconet@yahoo.com,*
Israel                          *netspace007@yahoo.com*

Dear Sir,

Re: Attached Letter to Mr. Jay I. Lazerowitz

Attached please find my letter of today to Mr. Jay I. Lazerowitz, attorney to Mr. Jacob
Binson.

In light of the fact that Mr. Lazerowitz does not act as your attorney, this letter is to
serve as formal notification that the attached letter addressed to Mr. Lazerowitz is to
serve as direct explicit notice of the content therein directly to you as part of the
Counterparty to the Memorandum of Understanding of September 27, 2004.

In a nut shell, due to your default on making the agreed loan to bring said
Memorandum into effect in a timely fashion, I hereby declare and record that said
Memorandum did not come into effect and is now null and expired (no further
extension of term is granted).

Alternatively, for the sake of caution, should said Memorandum be (wrongfully)
deemed in-effect at any past point in time, I hereby void said Memorandum, effective
immediately, due to material default of Counterparty (Mr. Jacob Binson and Mr.
Itzhak Bannai).

I reserve all rights to collect all damages caused by Counterparty's conduct.

Sincerely,

Boris Bannai



5/8/05

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA.

Jacob Binson and Itzhak Bannai,
                    Plaintiffs,

vs.                                                    Civil Action No. 04-C-196
                                                       Judge David W. Nibert

American Alloys, Inc.;
Industrial Development, LLC;
Highlanders Alloys, LLC,
Global Industrial Projects, LLC,
Boris Bannai, individually and as a stockholder
And/or officer in the foregoing corporations, and
All Crane Rental Corporation, an Ohio Corporation,
Aggreko, Inc., a Louisiana Corporation,
Air Equipment Sales and Service, Inc., a
Kentucky Corporation.
                    Defendants.

### REPLY TO COUNTERCLAIM

Now come the Plaintiffs, by counsel, R. Michael Shaw, and for their Reply to

the Counterclaim filed by Defendants, state as follows:

### FIRST DEFENSE

Defendants' claim fails to state a claim against Plaintiffs upon which relief can

be granted, and thus must be dismissed pursuant to Rule 12(b)(6) of the West

Virginia Rules of Civil Procedure.

### SECOND DEFENSE

Plaintiffs assert the defenses of comparative or contributory negligence and

fault, which proximately caused or contributed to damages of the Plaintiffs.

### THIRD DEFENSE

HAW & TATYERSON, L.C.
ATTORNEYS AT LAW
POINT PLEASANT, WV

Defendants failed to name necessary and indispensible parties in whose absence complete relief cannot be accorded.

## FOURTH DEFENSE

Defendants have failed in their duty to mitigate damages.

## FIFTH DEFENSE

Defendant's claims are barred by the applicable statute of limitations.

## SIXTH DEFENSE

Plaintiffs plead the doctrines of accord and satisfaction, estoppel, laches, collateral, and any and all affirmative defenses under Rule 8(c) of the West Virginia Rules of Civil Procedure.

## SEVENTH DEFENSE

Plaintiffs reserve the right to assert any defenses asserted by any other party, not inconsistent with Plaintiffs' position, or which discovery may reveal appropriate.

## EIGHTH DEFENSE

Plaintiffs assert the defense of fraud as more specifically alleged in Plaintiffs' Complaint.

## NINTH DEFENSE

Plaintiffs deny the allegations in the Defendants' Counterclaim.

WHEREFORE, having fully replied to the Counterclaim, Plaintiffs request that

the Counterclaim be dismissed, and that they be granted the relief prayed for in their

Complaint.

JACOB BINSON and
ITZHAK BANNAI,

By Counsel,

R. Michael Shaw, (WV # 3354)
SHAW & TATTERSON, L.C.
P.O. Box 3
Pt. Pleasant, WV 25550
(304) 675-2669

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA,

**Jacob Binson and Itzhak Bannai,**
           **Plaintiffs,**

vs.                                                    **Civil Action No. 04-C-196**
                                                       **Judge David W. Nibert**

**American Alloys, Inc.;**
**Industrial Development, LLC;**
**Highlanders Alloys, LLC,**
**Global Industrial Projects, LLC,**
**Boris Bannai, individually and as a stockholder**
**And/or officer in the foregoing corporations, and**
**All Crane Rental Corporation, an Ohio Corporation,**
**Aggreko, Inc., a Louisiana Corporation,**
**Air Equipment Sales and Service, Inc., a**
**Kentucky Corporation.**
                      **Defendants.**

### CERTIFICATE OF SERVICE

The undersigned counsel for the Plaintiffs, does hereby certify that on the 8th

day of May, 2005, a true copy of the foregoing **"REPLY TO COUNTERCLAIM"** was

served upon counsel of record by depositing the same, this date, in the U.S. Mail,

postage pre-paid, in an envelope addressed as follows:

         Mark A. Ferguson, Esq.                 Gary A. Collias, Esq.
         SPROUSE & FERGUSON, PLLC               P.O. Box 70007
         230 Capitol Street, Suite 300          Charleston, West Virginia 25301
         Charleston, West Virginia 25301


R. Michael Shaw, Esq.
SHAW & TATTERSON, L.C.
P.O. Box 3
610 Main Street
Point Pleasant, WV  25550
(304) 675-2669

IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA.

Jacob Binson and Itzhak Bannai,
                                Plaintiffs,

vs.                                                    Civil Action No. 04-C-196
                                                       Judge David W. Nibert

American Alloys, Inc.;
Industrial Development, LLC;
Highlanders Alloys, LLC,
Global Industrial Projects, LLC,
Boris Bannai, individually and as a stockholder
And/or officer in the foregoing corporations, and
All Crane Rental Corporation, an Ohio Corporation,
Aggreko, Inc., a Louisiana Corporation,
Air Equipment Sales and Service, Inc., a
Kentucky Corporation.
                                Defendants.

## MOTION FOR ISSUANCE OF
## WARRANT FOR BORIS BANNAI

Now come the Plaintiffs, by counsel, R. Michael Shaw, and move this Court

pursuant to West Virginia Code § 53-7-1, to issue a warrant for the arrest of Boris

Bannai. In support of this Motion, Plaintiffs state as follows:

1.      The Plaintiffs have invested in excess of Three Million Dollars in said

operation in which the defendants have, in effect, agreed to the Court Receiver,

heretofore.   The plaintiff, Jacob Binson, was to be a principal stockholder of

Highlanders Alloys, LLC. and all related companies.   The details are set out more

specifically in the Complaint filed herein and are incorporated by reference.

2.      Plaintiffs contend they are entitled to recover an amount in excess of

Three Million Dollars from Defendants.

3.      That Defendants have removed, or are about to remove, material from

the Highlanders Alloys, LLC, plant site in Mason County, West Virginia, with intent to

defraud the Plaintiffs.

SHAW & TATTERSON, L.C.
ATTORNEYS AT LAW
POINT PLEASANT, WV

4. That Plaintiffs believe Defendants have converted or are about to convert property into money with like intent.

5. That Defendants have property or rights in action which have been concealed.

6. That Defendant, Boris Bannai, is about to leave the State and reside permanently in another state or country, without paying the debt or liability for which the action or suit is brought.

7. That defendant, Boris Bannai, fraudulently contracted the debt for which this suit was brought, based on the information contained herein.

8. That Gary Wolfe has been employed by the law firm of Shaw & Tatterson, L.C., on behalf of the Plaintiffs and has been informed of the following:

a. That Boris Bannai personally told Gary Wolfe that he would not attend the deposition scheduled for him on May 27, 2005, after being served with a subpoena, because he was going to be leaving the country.

b. That Gary Wolfe was informed by Sagi Ginzburg, that this ordeal "will be over very soon."

c. That Rick Smith, former maintenance supervisor at said Highlanders Alloys, LLC, informed Gary Wolfe that various materials have been moved from the plant and stored off premises.

d. That other salaried workers of the plant informed Gary Wolfe that their payroll checks were bouncing or were returned for non-sufficient funds. and that Boris Bannai had approximately $1,000,000.00 of materials moved off site and are being stored in Jackson County, West Virginia.

SHAW & TATTERSON, L.C.
ATTORNEYS AT LAW
POINT PLEASANT, WV

e.     Further, on the 9th day of May, 2005, Gary Wolfe was informed by a

number of employees that the work force of over 100 employees at the plant at the

time of the filing of the complaint in this suit has been reduced to approximately 15.

After Gary Wolfe left the plant, the defendant, Boris Bannai, called him on his cell

phone and asked him what information he was trying to find, Gary Wolfe told him of

the concerns about the operations of the plant and also told Bannai that he had been

informed and could see for himself that the work force was reduced significantly and

that only 15 people were working.  Mr. Bannai confirmed this.

Affidavits in support of this Motion by Gary Wolfe and Jacob Binson are

attached hereto and marked Exhibits A and B respectively.

Based on all of the allegations and information contained herein, the plaintiffs

contend that they are justly entitled to recover in said action pending and that multiple

grounds as set out in Code 53-7-1 are established.

WHEREFORE, your Plaintiffs pray that this Court issue an Order for the arrest

of Boris Bannai, and for such other relief as this Court sees fit.

JACOB BINSON and
ITZHAK BANNAI,

By Counsel,

R. Michael Shaw, (WV # 3354)
SHAW & TATTERSON, L.C.
P.O. Box 3
Pt. Pleasant, WV 25550
(304) 675-2669

## IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA.

**Jacob Binson and Itzhak Bannai,**
                    **Plaintiffs,**

**vs.**                                          **Civil Action No. 04-C-196**
                                                 **Judge David W. Nibert**

**American Alloys, Inc.;**
**Industrial Development, LLC;**
**Highlanders Alloys, LLC,**
**Global Industrial Projects, LLC,**
**Boris Bannai, individually and as a stockholder**
**And/or officer in the foregoing corporations, and**
**All Crane Rental Corporation, an Ohio Corporation,**
**Aggreko, Inc., a Louisiana Corporation,**
**Air Equipment Sales and Service, Inc., a**
**Kentucky Corporation.**
                    **Defendants.**

### CERTIFICATE OF SERVICE

The undersigned counsel for the Plaintiffs, does hereby certify that on the 11th

day of May, 2005, a true copy of the foregoing **"MOTION FOR ISSUANCE OF**

**WARRANT FOR BORIS BANNAI"** was served upon counsel of record by depositing

the same, this date, in the U.S. Mail, postage pre-paid, in an envelope addressed as

follows:

Mark A. Ferguson, Esq.                    Gary A. Collias, Esq.
SPROUSE & FERGUSON, PLLC                  P.O. Box 70007
230 Capitol Street, Suite 300            Charleston, West Virginia 25301
Charleston, West Virginia 25301

R. Michael Shaw, Esq.
SHAW & TATTERSON, L.C.
P.O. Box 3
610 Main Street
Point Pleasant, WV  25550
(304) 675-2669

SHAW & TATTERSON, L.C.
ATTORNEYS AT LAW
POINT PLEASANT, WV

06/01/2005  01:13    304-342-9119              SPROUSE & FERGUSON              PAGE  02/17
Case 3:05-bk-30516  30206-10-157  Filed 06/06/05   Entered 06/06/05 11:44:54   Desc
MAY-13-2005-FRI 11:12 AM  JUDGE DAVID NIBERT Exhibit    Page 113 of 115  304 675 7757

P. 001/004

IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA

JACOB BINSON, et al.,

Plaintiffs,

vs.

Civil Action No. 04-C-196

AMERICAN ALLOYS, INC., et al.,

Defendants.

## O R D E R

On the 11th day of May, 2005, came the plaintiffs, by counsel, R. Michael Shaw, and moved this Court, pursuant to West Virginia Code, Chapter 53, Article 7, Section 1, to issue a warrant for the arrest of Boris Bannai. Said motion was supported by the affidavit of Gary Wolfe, a private investigator retained by the plaintiffs, and the affidavit of Jacob Binson, one of the plaintiffs. This Court has previously entered an order, dated the 25th day of March, 2005, enjoining the defendants from disposing of any of the assets of the said defendants except in the ordinary affairs of the business or businesses of the defendants. Based upon the motion and the affidavits submitted in support thereof, the Court makes the following preliminary findings of fact:

1.     The plaintiffs contend they are entitled to recover a sum of money from the defendants in excess of Three Million Dollars.

2.     The plaintiffs allege they are entitled to certain shares of stock in certain enterprises operated by the defendant, Boris Bannai, including the business enterprise located in Mason County, West Virginia. The affidavits submitted in support of the motion indicate the Mason County business is

currently not operating and the workforce at the Mason County facility has been reduced from a number of over 100 employees to approximately 15 employees.

3. The affidavits indicate that employees at the Mason County facility have stated that payroll checks were being returned for non-sufficient funds and that Boris Bannai had caused approximately One Million Dollars of materials to be moved off the Mason County site, which materials are being stored in Jackson County, West Virginia.

4. The affidavits indicate that a shipment of ore from Africa necessary to operate the plant in Mason County had been received at a port in Baltimore, Maryland. Said ore was never delivered to the plant and the affiant, Jacob Binson, concludes that the ore had been sold to another company.

5. The affiant, Gary Wolfe, is informed by the defendant, Boris Bannai, that Mr. Bannai does not intend to appear at a deposition in this case scheduled for May 27, 2005, because Mr. Bannai is going to leave the country.

6. The affiant, Gary Wolfe, is informed by Sagi Ginzberg, an attorney for Boris Bannai, in response to a comment by Mr. Wolfe, "This seems like a never ending battle." Mr. Ginzberg stated, "It will be over very soon."

7. The facts alleged in the plaintiffs' motion for a warrant for the arrest of Boris Bonnai, verified by the affidavits of Gary Wolfe and Jacob Binson, indicate to this Court the defendant, Boris Bannai, has removed and/or is about to remove property out of the State of West Virginia with intent to defraud the creditors; that he has converted or is about to convert his property or the property of certain businesses owned by him into money with intend to defraud his creditors; and/or Boris Bannai is about to leave the state and reside permanently in another country without paying the debt or liability for which this action is brought.

8.    It appears that the allegations made by the plaintiffs in the motion and supported by the affidavits set out facts which would support a conclusion of this Court that Boris Bannai is in contempt of the Order of this Court, entered on March 25, 2005, which enjoined and restrained the defendants from disposing of assets other than in the ordinary course of business.

## Conclusions of Law

1.    Plaintiffs have set forth sufficient facts for this Court to enter an order pursuant to West Virginia Code, Chapter 53, Article 7, Section 1, to issue a warrant for the arrest of the defendant, Boris Bannai.

2.    The facts set out by the plaintiffs in motion further indicate that the defendant, Boris Bannai, is in contempt of the Order of this Court, entered on March 25, 2005.

It is, therefore, ADJUDGED and ORDERED as follows:

1.    The Clerk of this Court shall issue a warrant for the arrest of Boris Bannai. Upon being taken into custody the said Boris Bannai shall be held at the Western Regional Jail until such time as he shall deposit either with (a) the officer taking him into custody, or (b) the Clerk of this Court, the sum of Twenty-Five Thousand Dollars ($25,000.00), good and sufficient surety, to secure his attendance before this Court from time to time until further Order of the Court.

2.    Prior to the issuance of said warrant by the Clerk of this Court, the plaintiff shall deposit with said Clerk a bond in the penal sum of Fifty Thousand Dollars ($50,000.00). The condition of which is to secure payment of all damages the defendant, Boris Bannai, may sustain by reason of the arrest pursuant to the warrant issued by virtue of this Order in the event it should hereafter appear that said Order was wrongfully obtained.