## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

IN RE: HIGHLANDERS ALLOYS, LLC,

                    Debtor.

INTERNAL REVENUE SERVICE,

                    Appellant,

v.                                          CIVIL ACTION NO. 3:13-7897
                                            (Consolidated with 3:13-7896)
                                            BANKRUPTCY NO. 05-30516

HIGHLANDERS ALLOYS, LLC,

                    Appellee.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Appellant Internal Revenue Service's ("the Service" or "the IRS") appeal (ECF No. 8) from the Bankruptcy Court's Order dated October 15, 2012. Appellee Highlanders Alloys, LLC ("Highlanders"), has filed a cross-appeal (ECF No. 11). For the reasons stated below, the Court **AFFIRMS** the Bankruptcy Court's allowance of the Binson deduction, **AFFIRMS** the Bankruptcy Court's allowance of the Industrial Development deduction, and **AFFIRMS** the Bankruptcy Court's reduction of the accuracy-related penalty.

### I.  Factual Background

This case stems from events surrounding the sale of assets by Highlanders and its accompanying tax liability.  In 2006, Highlanders sold its assets to Felman Production for $20,000,000.  *In re: Highlanders Alloys, LLC*, No. 05-30516, Final Order Granting Part Summ.



J. Debtor at 1 (Bankr. S.D. W. Va. Oct. 15, 2012) (hereinafter "Final Order"),[1] *available in instant case at* ECF No. 3-24. After this sale, Highlanders filed its tax returns for the years 2002 through 2006. *Id.* The IRS subsequently audited Highlanders' tax returns. *Id.* As a result of this audit, the IRS disallowed eight deductions claimed by Highlanders and imposed an accuracy-related penalty pursuant to 26 U.S.C. § 6662. *Id.*; Appellant's Br. at 7, ECF No. 8 (hereinafter "IRS's Br.").

Highlanders concurred with making adjustments for five of these flagged deductions and made a corresponding income tax payment to account for those five disallowed deductions. Final Order at 2. However, Highlanders contested the IRS's disallowance of the remaining flagged deductions: 1) a deduction of $3,200,000 for the so-called "Binson loan"; 2) a deduction of $2,171,013 for payment of claims assigned to Industrial Development; and 3) a deduction of $5,371,013 based on a change in Highlanders' net-operating loss ("NOL").[2] *Id.* Highlanders also contested the accuracy-related penalty of $508,843. *Id.* Highlanders and the IRS filed cross-motions for summary judgment seeking resolution of these contested issues. *Id.* at 1.

On October 15, 2012, United States Bankruptcy Judge Ronald G. Pearson issued a final order granting in part Highlanders' motion for summary judgment. Specifically, the Bankruptcy Court noted that Highlanders agreed to reduce the Binson deduction from $3,200,000 to $1,240,000, and it found a sufficient basis for allowing a deduction in that lesser amount. *Id.* at 2-5. The Bankruptcy Court also found that the deduction for payment to Industrial Development

---

[1] A corrective order, fixing a typographical error in the original final order, was filed on October 29, 2012.

[2] The parties stipulated that resolution of the NOL deduction is controlled by resolution of disputes surrounding the Binson loan deduction and the Industrial Development deduction. *Id.* at 2.

was proper. *Id.* at 6-7. Lastly, the Bankruptcy Court found that some penalty was proper but that the penalty imposed by the IRS should be reduced based on resolution of the Binson deduction and the Industrial Development deduction. *Id.* at 8.

Highlanders appealed the Bankruptcy Court's ruling, and its appeal was docketed with this District Court as Civil Action No. 3:13-7896. The IRS also appealed the Bankruptcy Court's ruling, and its appeal was docketed as Civil Action No. 3:13-cv-7897. However, the IRS and Highlanders "initially understood that [their appeals] would be a single appeal with a single action number" and, to that end, filed a joint motion to consolidate the appeals. ECF No. 9. The Court granted the motion, ordering that both appeals proceed under the instant case number. ECF No. 10. As noted above, the IRS filed its brief on appeal, ECF No. 8, and Highlanders filed a brief responding to the IRS's arguments and presenting its own arguments on appeal, ECF No. 11. The IRS subsequently filed a reply brief. ECF No. 12. The cross-appeals are now ripe for resolution.

In Section II, the Court discusses the standard of review applicable to these cross-appeals of the Bankruptcy Court's final order. In Section III, the Court examines the Binson deduction. In Section IV, the Court analyzes the Industrial Development deduction. Lastly, in section V, the Court examines the accuracy-related penalty.

## II. Standard of Review

On appeal, a district court reviews a bankruptcy court's findings of fact for clear error. *In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003); Fed. R. Bankr. P. 8013. This means that a finding of fact will only be reversed on appeal "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake

3

has been committed." *In re Green*, 934 F.2d 568, 570 (4th Cir. 1991). In contrast, questions of law are reviewed de novo. *In re Litton*, 330 F.3d at 642. "[I]n considering mixed questions of law and fact, we review the factual portion of the inquiry for clear error and the legal conclusions de novo." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 512 (4th Cir. 2002) (citing *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch,* 80 F.3d 895, 905 (4th Cir. 1996)); *see also U.S. Dep't of Health & Human Servs. v. Smitley*, 347 F.3d 109, 116 (4th Cir. 2003) (holding that bankruptcy's court's decisions on mixed questions of law and fact are reviewed under a hybrid standard). Where there are mixed questions of law and fact in which legal issues predominate, *de novo* review applies. *See Carter Enters. v. Ashland Specialty Co.*, 257 B.R. 797, 800 (S.D. W. Va. 2001).

### III. Binson Deduction

Highlanders claimed a deduction of $3,200,000 on its 2006 tax return based on a proof of claim submitted by Jacob Binson. Final Order at 2; IRS's Br. at 8. The underlying basis of this proof of claim was that Mr. Binson had sued Highlanders for damages; their dispute was eventually settled, with Highlanders agreeing to pay Mr. Binson $4,050,000, presumably using part of the $20,000,000 earned from sale of its assets. Final Order at 2. During that litigation, it was revealed that Mr. Binson has paid approximately $1,960,000 to Highlanders or its affiliates or owners, and Highlanders accordingly agreed to reduce its $3,200,000 deduction by $1,960,000. *Id.* at 2-3. Highlanders argued to the Bankruptcy Court that it should be able to claim a deduction of $1,240,000—the remaining amount—on its 2006 tax return.

4

## A. Bankruptcy Court's Final Order and Arguments on Appeal

In its final order, the Bankruptcy Court allowed Highlanders to take a deduction of $1,240,000 on its 2006 tax return for the Binson claim. *Id.* at 5. The Court noted that Highlanders had earlier moved for approval of a sale of assets free and clear of liens, claims, and encumbrances, presumably referring to the $20,000,000 sale of assets by Highlanders. *Id.* at 3. The Court further noted that it had approved Highlanders' motion and, "to protect the interests of all, including those who held the right for payment such as [Mr.] Binson, . . . ordered the sale funds held by counsel for the Debtor." *Id.* at 3-4. Additionally, "[n]o disbursements were to be made from those funds without specific Court order." *Id.* at 4. The Court went on to note its earlier determination that "the sale proceeds would be adequate to pay all claims" and that "[t]he only other possible thing that could have been done by the Debtor or the Court to segregate funds for specific creditors would be to go through the unnecessary and burdensome step of estimating claims to identify which dollar was to be earmarked for every specific claim." *Id.* The Court concluded that this arrangement satisfied bankruptcy law, including the requirements of 26 U.S.C. 461(f), known as the contested liabilities exception to the all-events test. *Id.* The Court further noted:

> Even if the Court is found to have been in error with respect to allowing this deduction above in 2006, by reason of the order channeling all claims to the funds in escrow and the later deposits with the Clerk, there is no question the deduction would be allowable in 2008 having the effect of increasing an [N]OL carry back in 2008 and thus offsetting taxes due in 2006. The net result would be a very small timing difference because of the interest and the potential penalties.

*Id.* at 5.

The IRS argues that Highlanders should not be allowed to take a deduction for the Binson claim in 2006. In support of that position, the IRS argues that the Binson claim could only be

5

treated as a deduction if and when the payment satisfied the requirements of 26 U.S.C. § 461(f).

According to the IRS, the contested liabilities exception was not satisfied until Mr. Binson

received payment in 2008. Highlanders argues that the Bankruptcy Court's ruling concerning

the Binson deduction was proper.

The all-events test is used to determine when an accrual method taxpayer[3] incurs an

expense and, therefore, when the expense can be claimed as a deduction. According to the test,

an expense can be deducted "in the taxable year in which all the events have occurred that

establish the fact of the liability, the amount of the liability can be determined with reasonable

accuracy, and economic performance has occurred with respect to the liability." 26 C.F.R. §

1.461–1(a)(2)(i). The contest liabilities exception to the all-events test states in pertinent part as

follows:

> If--
> (1) the taxpayer contests an asserted liability,
> (2) the taxpayer transfers money or other property to provide for the satisfaction
> of the asserted liability,
> (3) the contest with respect to the asserted liability exists after the time of the
> transfer, and
> (4) but for the fact that the asserted liability is contested, a deduction would be
> allowed for the taxable year of the transfer (or for an earlier taxable year)
> determined after application of subsection (h), then the deduction shall be allowed
> for the taxable year of the transfer.

26 U.S.C. § 461(f). It is undisputed that Highlanders is an accrual method taxpayer and that the

Binson claim did not satisfy the all-events test in 2006. Therefore, this Court must determine if a

deduction was proper pursuant to the contested liabilities exception. The IRS argues that the

second and fourth elements of § 461(f) are not met and that the Bankruptcy Court's alternative

---

[3] The accrual method is "[a]n accounting method that records entries of debits and credits when the revenue or liability arises, rather than when the income is received or an expense is paid." Black's Law Dictionary, *Accounting Method* (9th ed. 2009).

6

holding—allowing the deduction in 2008 would have resulted in a carry back offsetting the taxes

due in 2006 anyway—is incorrect.  The Court examines each of these arguments in turn below.

### B.  Whether Transfer was to Provide for Satisfaction of Asserted Liability

The second element of the contested liabilities exception requires that "the taxpayer

transfers money or other property to provide for the satisfaction of the asserted liability."  26

U.S.C. § 461(f)(2).  The Treasury Regulations provide guidance on what constitutes a transfer in

satisfaction of this second element:

> A taxpayer may provide for the satisfaction of an asserted liability by transferring money or other property beyond his control to--
> (A) The person who is asserting the liability;
> (B) An escrowee or trustee pursuant to a written agreement (among the escrowee or trustee, the taxpayer, and the person who is asserting the liability) that the money or other property be delivered in accordance with the settlement of the contest;
> (C) An escrowee or trustee pursuant to an order of the United States or of any State or political subdivision thereof or any agency or instrumentality of the foregoing, or of a court, that the money or other property be delivered in accordance with the settlement of the contest; or
> (D) A court with jurisdiction over the contest.

26 C.F.R. § 1.461–2(c)(1)(i).  The Regulations further provide, "In order for money or other

property to be beyond the control of a taxpayer, the taxpayer must relinquish all authority over

the money or other property."  *Id.* § 1.461–2(c)(1)(ii).  Additionally, the Regulations specify

what is *not* a transfer "to provide for the satisfaction of an asserted liability":

> (A) Purchasing a bond to guarantee payment of the asserted liability;
> (B) An entry on the taxpayer's books of account;
> (C) A transfer to an account that is within the control of the taxpayer;
> (D) A transfer of any indebtedness of the taxpayer or of any promise by the taxpayer to provide services or property in the future; and
> (E) A transfer to a person (other than the person asserting the liability) of any stock of the taxpayer or of any stock or indebtedness of a person related to the taxpayer (as defined in section 267(b)).

7

*Id.* § 1.461–2(c)(1)(iii). The determination of whether Highlanders "transfer[ed] money or other property to provide for the satisfaction of the asserted liability," is a mixed question of law and fact. This Court reviews the legal component of the issue *de novo*, whereas the factual component is reviewed for clear error.

In this case, the Bankruptcy Court ordered that Highlanders place the $20,000,000 from the sale of assets in an escrow account. Final Order at 3 ("All funds received in the $20,000,000 sale of assets by Debtors [sic] . . . were, from and after the date of the sale to the present date, solely under the control of this [Bankruptcy] Court, in an escrow account held in trust by Debtor's counsel."). There is conflicting authority regarding whether the placement of funds in an escrow account by order of the Bankruptcy Court is a transfer "to provide for the satisfaction of the asserted liability."

The only case cited by the parties and found by this Court which explicitly discusses whether a transfer pursuant to the order of a bankruptcy court satisfies this second element of § 461(f) is *Matter of I. J. Knight Realty Corp.*, 431 F. Supp. 946 (E.D. Pa. 1977). In that case, a realty company's assets were placed in a receivership and then, once the company filed for bankruptcy, the funds were held in trust for resolution of the bankruptcy estate. The bankruptcy trustee subsequently claimed a deduction for fire damage claims, which the IRS disputed. In support of the deduction, the trustee "contend[ed] that the transfer of all assets of [the company] from the receiver under Chapter XI to the Court pursuant to the adjudication of bankruptcy on May 14, 1963, constitutes the transfer required by Section 461(f)(2)." *Id.* at 953. The trustee further argued that "the bankruptcy adjudication constituted an order that the money and property of [the company] be delivered in accordance with the settlement of the fire damage

8

claims and/or that it constituted a transfer to a court with jurisdiction over the contest since the

Bankruptcy Court has jurisdiction over contested administrative claims." *Id.* at 954. The district

court, however, found that § 461(f)(2) was not satisfied because, in order to qualify, the "transfer

must be *specifically earmarked* for payment of the particular liability." *Id.* (emphasis added).

The Court further noted:

> The Trustee's argument [in favor of the deduction] provides only an indirect,
> attenuated link [between the transfer and the liability]. Although it may well have
> appeared at the time of filing the returns in question that the entire bankrupt's
> estate would be required to satisfy the fire damage claimants if they were
> successful, *the transfer of assets to the Bankruptcy Court was for the purpose of
> disposition in accordance with bankruptcy law, not specifically for the payment of
> fire damage claims*. In fact, even though no fire damage claims have yet been
> paid, already certain unrelated secured claims and incidental expenses have been
> paid out of the estate. The type of transfer contemplated by Section 461(f)(2) is
> wholly incompatible with the consequences of a transfer of property pursuant to a
> bankruptcy decree. The former must limit the transferred property's use to
> payment of specific liabilities; the latter must leave the assets available to satisfy
> all claimants in accordance with bankruptcy law. The fortuitous circumstance
> that bankruptcy law could mandate the application of the entire estate in
> satisfaction of the contested liability does not alter this basic dichotomy.
> Accordingly, the Court is constrained to hold that the transfer of assets to the
> Bankruptcy Court cannot satisfy the requirements of Section 461(f)(2).

*Id.* (emphasis added) (footnote omitted).    Highlanders argues that *Knight Realty* is

distinguishable "because it involved determination that funds in a bankruptcy had not been

transferred beyond the taxpayer's control." Highlanders' Br. at 6. However, a review of *Knight

Realty* indicates that the court's decision did not hinge on the issue of control but rather on the

fact that the transfer of assets was not earmarked for fire damage claims.

Highlanders cites *Chem Aero, Inc. v. United States*, 694 F.2d 196 (9th Cir. 1982), in

support of its argument that the transfer to the escrow account under the direction of the

Bankruptcy Court satisfies § 461(f)(2). In that case, the Ninth Circuit Court of Appeals

discussed whether § 461(f)(2) was met where the taxpayer appealed a judgment entered against

it, posted a bond as was required to appeal the judgment, and then—after the judgment was

affirmed—claimed a deduction for that judgment in 1975, the year in which the original

judgment was entered. The IRS argued that the deduction could not be claimed until 1976, when

the judgment was affirmed and actually paid. In finding that the contested liabilities exception

was met in 1975, the Ninth Circuit noted:

> The statutory purpose [of § 461(f)] can be fulfilled by allowing the taxpayer to
> take the deduction whenever the money for the settlement of the contested
> liability is irrevocably parted with, provided that the manner of transfer is not
> open to the possibility of tax abuse. The government's interpretation of the
> regulation is too narrow, since it prevents this taxpayer from deducting money
> transferred beyond its control, even when the risk of tax abuse is absent.

*Id.* at 200. However, in that case, the asset at issue—the bond—was specifically earmarked to

pay one specific debt. *See also Varied Investments, Inc. v. United States*, 31 F.3d 651, 654-55

(8th Cir. 1994) (citing *Chem Aero* and finding that escrow agreement satisfied § 461(f) where the

underlying bond was taken to satisfy a specific debt).[4]

The IRS argues that the reasoning of *Chem Aero* has been supplanted by *Consolidated*

*Freightways, Inc. v. C.I.R.*, 708 F.2d 1385 (9th Cir. 1983), decided the year after *Chem Aero*. In

that case, Consolidated claimed deductions for its deposits to a surety company; these deposits

were equal to Consolidated's projected liability for certain accidents. Consolidated would settle

the claims involving these accidents by paying claimants directly—not by transferring money to

the claimants from the surety company—and then the surety company would reduce the amount

required to be deposited. The IRS disallowed deductions for the deposits Consolidated made

with the surety company, and the Ninth Circuit agreed. Although the Ninth Circuit would not

---

[4] A district court in the Fourth Circuit declined to follow *Chem Aero* and *Varied Investments*, but
on different grounds that those explained above. *Goodrich Corp. v. United States*, 846 F. Supp.
2d 445, 451 (W.D.N.C. 2012).

determine whether § 461(f) required that the money subject to transfer was the same money used to pay the liability, known as the "same money" requirement, it did note that the funds deposited with the surety company were not the funds used to pay claimants. *Id.* at 1393-94. The Ninth Circuit further noted that even if the "same money" requirement were rejected, the transfers to the surety company still did not satisfy § 461(f) because the surety account situation could allow Consolidated to impermissibly accelerate deductions, as "refunds were not required when deposits exceeded liabilities" such that "Consolidated's accounts . . . had the potential of not being in balance at the end of the tax year." *Id.* Additionally, the Ninth Circuit found that §461(f) was not satisfied because the transfers were made to provide security for the surety company, and that, therefore, the deduction failed the purpose and intent requirement of § 461(f). *Id.* at 1394 ("For the transfer to be deductible, it must have been made to provide for the satisfaction of the asserted liability. Any other reason for the transfer fails to satisfy the statute." (footnote omitted) (internal quotation marks omitted)).

In the present case, the Bankruptcy Court found that it would have been "unnecessary and burdensome" to earmark Highlanders' assets held in escrow for the payment of certain liabilities because it had been "determined that the sale proceeds would be adequate to pay all claims." Final Order at 4. The Bankruptcy Court further found that such a "process would be inefficient, and would result in duplicate and unnecessary legal expenses." Final Order at 4. Nothing in the record indicates that the Bankruptcy Court erred in making this finding. Accordingly, this Court accepts that earmarking the assets in escrow here would have placed an additional burden on the Bankruptcy Court and would have been unnecessary. Given these facts, none of the cases cited by the parties are clearly on point. In *Knight Realty*, the debtor's

11

liabilities far exceeded the value of the assets that were transferred to the trust. *Knight Realty*, 431 F. Supp. at 953. In the present case, the Bankruptcy Court found that the funds held in escrow "would be adequate to pay all claims including the capital gains tax due to the taxing authorities." Final Order at 4. Furthermore, nothing in the court's opinion in *Knight Realty* indicates that the bankruptcy court there found that earmarking funds would be "unnecessary and burdensome." *Knight Realty*, 431 F. Supp. at 952-55. In the instant case, however, the Bankruptcy Court specifically decided that there was no need to earmark specific funds for specific creditors because there were enough funds available to fully pay all creditors from the assets in the escrow account. Final Order at 4.

Likewise, the current case can be distinguished from *Consolidated Freightways*, where Consolidated deposited with a surety company an amount equal to its estimated liability for each accident in which it was involved. *Consolidated Freightways*, 708 F.2dat 1392. "[W]hen the deposit became greater than the estimated liabilities, Consolidated would, at irregular intervals, request a refund." *Id.* Once each claim settled, "Consolidated would satisfy the claim by a payment directly to the claimant, and the amount of Consolidated's estimated liabilities would be reduced. No refund invariably followed the satisfaction of a claim, however." *Id.* Consolidated claimed deductions for the amounts that it deposited with the surety company. *Id.* For these reasons, the court in *Consolidated Freightways* was concerned not only with the potential "same dollars" issue, but with the potential for abuse. *Id.* at 1394. Because refunds were not automatically required when deposits exceeded liabilities, and Consolidated could accelerate its deductions "without regard to either the total estimated liabilities or the amount of claims settled," the court found "an opportunity for tax abuse." *Id.* No such problem is presented in the

12

instant case. Highlanders has adjusted its deduction for the Binson claim to reflect the precise outstanding amount claimed by Mr. Binson. Final Order at 2-3. There is no evidence that the Binson deduction provided Highlanders with an opportunity to abuse the tax code. Given the Bankruptcy Court's finding that earmarking the funds in the escrow account would be onerous and unnecessary, the fact that the escrow funds were put entirely beyond Highlanders' control, and the low risk of tax abuse here, the Court agrees with the Bankruptcy Court's holding that the Binson deduction meets the second element of the contested liabilities exception.

### C. Whether Deduction Would be Allowable for Taxable Year of Transfer

The IRS also argues on appeal that Highlanders cannot satisfy the fourth requirement of § 461(f): "but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer (or for an earlier taxable year) determined after application of subsection (h)." Section 461(h) states that "in determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs." 26 U.S.C. § 461(h)(1). The Court first looks to the Treasury Regulations' discussion of economic performance, and then to the principles provided in § 461(h). *See id.* § 461(h)(2) ("Except as provided in regulations prescribed by the Secretary, the time when economic performance occurs shall be determined under the following principles . . . .").

It should first be noted that § 461(f)(4) did not always include reference to (h). Rather, the statute was amended in 1984 to add the phrase "determined after application of subsection (h)" to § 461(f)(4). PL 98–369 (HR 4170), July 18, 1984, 98 Stat 494. Therefore, it is no wonder that *Knight Realty*, *Chem Aero*, and *Consolidated Freightways*—all decided before that

13

amendment—do not discuss the impact of § 461(h) upon analysis of § 416(f)(4). *Varied Investments, Inc. v. United States*, 31 F.3d 651, 653 (8th Cir. 1994), decided after the amendment, involved a 1986 bond filed by Varied when it appealed a judgment entered against it. After the judgment was affirmed in 1988, Varied paid the judgment using funds taken from the escrow account and a cashier's check. The Eighth Circuit held that Varied's 1986 deduction for the appeal bond satisfied § 461(f)(4) "because, had Varied paid the judgment to Farm Fuel in 1986, it would have been able to deduct the payment in that year as an ordinary and necessary business expense." *Id.* at 653. Section 461(h) was not discussed.

The Eighth Circuit's holding, however, appears to be in conflict with the IRS's own published interpretation of the amended version of § 461(f). *See* IRC § 461(f) Contested Liabilities UIL: 9300.30-00, 2004 WL 2646262 (I.R.S. Nov. 17, 2004). The guidance document notes explicitly that "IRC § 461(f) was amended in 1984 to provide that deductions after July 18, 1984, are subject to the economic performance rules." *Id.* at *5. It provides further that "economic performance does not occur until payment is made to the person to which the liability is owed" for a wide variety of liabilities, including those lying in tort or contract or arising from violation of law. *Id.* at *5 (noting economic performance requirements for these liabilities as distinguished from requirements for contested interest liabilities). The guidance document points to § 1.461-2(e)(2) of the Treasury Regulations in support of this economic performance requirement. *Id.* at *6. That Section provides as follows:

> (i) A taxpayer using an accrual method of accounting is not allowed a deduction under section 461(f) in the taxable year of the transfer unless economic performance has occurred.
> (ii) Economic performance occurs for liabilities requiring payment to another person arising out of any workers compensation act or any tort, or any other liability designated in § 1.461–4(g), as payments are made to the person to which

14

the liability is owed.  Except as provided in section 468B or the regulations thereunder, economic performance does not occur when a taxpayer transfers money or other property to a trust, an escrow account, or a court to provide for the satisfaction of an asserted workers compensation, tort, or other liability designated under § 1.461–4(g) that the taxpayer is contesting *unless the trust, escrow account, or court is the person to which the liability is owed or the taxpayer's payment to the trust, escrow account, or court discharges the taxpayer's liability to the claimant.*  Rather, economic performance occurs in the taxable year the taxpayer transfers money or other property to the person that is asserting the workers compensation, tort, or other liability designated under § 1.461–4(g) that the taxpayer is contesting or in the taxable year that payment is made from a trust, an escrow account, or a court registry funded by the taxpayer to the person to which the liability is owed.

26 C.F.R. § 1.461–2(e)(2) (emphasis added).  Section § 1.461–4(g) provides, in pertinent part,

that "[i]f the liability of a taxpayer requires a payment or series of payments to another person

and arises under any workers compensation act or out of any tort, breach of contract, or violation

of law, economic performance occurs as payment is made to the person to which the liability is

owed."  26 C.F.R. § 1.461–4(g)(2); *see also* § 1.461–4(g)(2)(ii) ("A liability arising out of a tort,

breach of contract, or violation of law includes a liability arising out of the settlement of a

dispute in which a tort, breach of contract, or violation of law, respectively, is alleged.").  The

Court does not believe that Mr. Binson's claim is not covered by § 1.461–4(g).[5]  Neither does

468B apply.[6]

---

[5] Highlanders asserts that the Bankruptcy Court found that the Binson claim did not solely lie in tort or breach of contract, and therefore fell outside the scope of § 461(h).  However, the Court cannot discern such a statement from the Final Order.

[6] Section 468B covers special rules for designated settlement funds.  In order to be considered a designated settlement fund, the taxpayer must have made an election to so treat the fund.  26 U.S.C. § 468B(d)(2)(F).  There is no indication that Highlanders made such an election in this case.

With all this in mind, it appears that, applying a *de novo* standard, economic performance did occur, pursuant to the Treasury Regulations. Here, "the trust, escrow account, or court is [not] the person to which the liability is owed." However, because the transfer of $20,000,000, which was adequate to pay all claims, to the escrow account in 2006 discharged Highlanders of its liability to Mr. Binson, Highlanders did complete economic performance when it transferred the funds into the escrow account. *See* 26 C.F.R. § 1.461–2(e)(2). Highlanders thus satisfied the fourth element of the contested liabilities exception.

### D. Bankruptcy Court's Alternative Holding Regarding Timing

In its final order, the Bankruptcy Court suggested that even if its holding regarding the satisfaction of § 461(f) was incorrect, the Binson deduction nonetheless stands on alternative grounds:

> Even if the Court is found to have been in error with respect to allowing this deduction above in 2006, by reason of the order channeling all claims to the funds in escrow and the later deposits with the Clerk, there is no question the deduction would be allowable in 2008 having the effect of increasing an [N]OL carry back in 2008 and thus offsetting taxes due in 2006. The net result would be a very small timing difference because of the interest and the potential penalties.

*Id.* at 5.

Because this Court agrees with the Bankruptcy Court that the Binson deduction was allowable in 2006, it is unnecessary to review this alternative holding. The Court notes, however, that Mr. Binson received $950,000 from Highlanders in 2008 and $2,374,228.57 in 2010. IRS's Br. at 17. Thus, if the deductions are not allowable in 2006, and are only allowable in the years when actual payments were made to Mr. Binson, it is not necessarily true that the *entire* deduction would be allowable in 2008. This is because the 2008 payment to Mr. Binson was only *a portion* of the entire payment due. A NOL can be "carried back" from the year it is

16

incurred to the two proceeding tax years to offset taxable income in those years. 26 U.S.C. § 172(b)(1)(A)(i). Therefore, only $950,000 could be "carried back" to offset tax liabilities in 2006, the tax year in question. The Bankruptcy Court is correct that there would only be a small timing difference as a result as to that $950,000. However, the remaining $290,000 comprising the Binson deduction (totaling $1,240,000) could not be considered paid until 2010 and could only be carried back to 2008.

### IV. Industrial Development Deduction

The Bankruptcy Court's final order also discussed the propriety of a deduction for payment to Industrial Development.[7] On summary judgment, the IRS argued that Highlanders acknowledged having mistakenly taken this deduction twice, in 2002 and 2005, and that its account methods did not eliminate the chance that a "double deduction" occurred. United States' Mem. Opp'n Debtor's Mot. Summ. J. at 1-3, *available in this case at* ECF No. 3-20. The Bankruptcy Court rejected the IRS's argument, noting the affidavit of William H. McKee, Jr., CPA, which explains "the efforts to reconcile accounts payable with paid claims in the Bankruptcy case." Final Order at 7. Based at least in part on Mr. McKee's affidavit, the Bankruptcy Court found "that those efforts eliminated any possibility of a double deduction for the payments to Industrial." *Id.* The Bankruptcy Court's determination that a double-deduction did not occur is subject to review under a clear error standard.

On appeal, the IRS makes several arguments regarding the Industrial Development deduction. First, the IRS attacks Highlanders' accounting methodology. As characterized by the IRS, "Highlanders argues that if the double deduction contained in its 2005 tax return related to

---

[7] Industrial Development had acquired the judgment lien claims of other parties and was accordingly owed payment by Highlanders for those claims. Final Order at 6.

Industrial Development was removed, the only effect would be that it would need to take larger deductions for the expenses paid in 2006 that were related to the non-Industrial court-ordered payments that it failed to claim on its returns." IRS's Br. at 20. According to the IRS, "this accounting gimmickry is flawed because it assumes that the non- Industrial Development court ordered expenses were not taken as expense deductions in earlier tax years. Stated another way, if the court-ordered payments made in 2006 had previously been taken as deductions on Highlanders' earlier tax returns, it would not be able to deduct them in 2006." *Id.* Although the IRS argued on appeal that various expenses were treated a deductions in 2002 and again in 2006, *id.* at 22, it subsequently withdrew this argument, IRS's Reply at 19. The IRS also suggests, in a footnote, that payments in 2006 to two other creditors involved in another related bankruptcy were likely taken in earlier years as well. IRS's Br. at 22. Likeliness, without further argument, does not suffice to disrupt to the Bankruptcy Court's holding. Although the taxpayer has the burden of proving entitlement to deductions, the IRS has not pointed to any information indicating that the 2006 payments had been treated as deductions earlier.

Further, the Bankruptcy Court stated that "importantly [the IRS] did not raise objection to the deduction taken by the debt for payments to . . . non-assigned judgment lien creditors in the audit of the tax return in question." Final Order at 7. The IRS contests this assertion as a "red herring" because Highlanders chose to forego deductions for those payments, the payments accordingly did not appear on Highlanders' 2006 tax return, and, therefore, the IRS had no reason to object to those payments. IRS Br. at 23. Even if the Bankruptcy Court was incorrect in its assertion regarding the IRS's failure to object, its ruling does not hinge on this point, and

18

therefore, this argument is not a sufficient basis for finding clear error in the Bankruptcy Court's ruling.

Second, the IRS argues that "Highlanders has not even attempted to establish that the factual assumption underlying its accounting methodology is correct. Evidence in the record suggests that its 'technical approach' is fatally flawed." IRS's Br. at 22. The IRS points out that Highlanders' itself admits an error in its revised accounting:

> Due to a technical preparation oversight by Debtor's accountants, one judgment lien claim was included in the payments made to Industrial in early 2006, as well as the other deferred Industrial claims that were not judgment liens. Thus, this was included twice in payables, and Debtor readily conceded this mistake. Therefore, the Service's own audit found and corrected the only instance of such a double deduction.

Highlanders' Br. at 22 n.7.   However, this was merely a minor error, reflecting a mischaracterization of a certain judgment lien, not deeper uncertainly about the possibility for double deductions. Although Highlanders had many recordkeeping problems, the Court does not find clear error in the Bankruptcy Court's decision that Highlanders' subsequent accounting efforts have satisfactorily resolved the underlying issue surrounding the Industrial Development deduction.

Third, the IRS argues that Highlanders has not proven that its payment to Industrial Development was not deducted earlier as part of its $38,000,000 in unrecorded costs of goods sold deductions from 2002 to 2005. IRS's Reply at 20-21. The Court will not consider this eleventh hour argument, apparently absent from the IRS's motion for summary judgment and its brief on appeal, when the evidence it now points to as supporting that claim was available on summary judgment. Although this assertion about $38,000,000 in deductions taken from 2002 to 2005 is curious, the Court is not convinced that this point disrupts the earlier conclusion about

the corrective nature of Highlanders' accounting. Overall, the Court is not "left with the definite and firm conviction that a mistake has been committed." Therefore, the Bankruptcy Court's allowance of the Industrial Development deduction stands.

### V. Accuracy-Related Penalty

The IRS assessed an accuracy-related penalty against Highlanders due to the disallowed deductions on Highlanders' tax return. Final Order at 2. The Bankruptcy Court reduced the penalty in accordance with its allowance of the Binson deduction and the Industrial Development deduction. Final Order at 8. The Bankruptcy Court did not abate the entire penalty as Highlanders had requested. Final Order at 8. On appeal, the IRS argues that the penalty should not have been reduced because the deductions should not have been allowed. IRS's Br. at 18-19. Highlanders argues that the Bankruptcy Court should have abated the entire penalty for reasonable cause. Highlanders' Br. at 18-19.

Given the Court's holdings above affirming the allowance of the Binson deduction and the Industrial Development deduction, the Court agrees with the Bankruptcy Court's decision to reduce the accuracy-related penalty in accordance with those allowances. Furthermore, the Court affirms the Bankruptcy Court's decision not to abate the entire accuracy-related penalty. 26 U.S.C. § 6662 imposes accuracy-related penalties where tax liability is understated. 26 U.S.C. § 6664 states that no penalty should be imposed under § 6662 where there is reasonable cause for the underpayment and the taxpayer acted in good faith. 26 U.S.C. § 6664(c). The Bankruptcy Judge found that Highlanders' records were in poor condition and that the company had a history of non-compliance with tax requirements, and thus did not apply the reasonable cause exception. Final Order at 8. This Court finds no clear error in the Bankruptcy Court's

20

findings. Accordingly, the Court agrees with the Bankruptcy Court that there is no reasonable cause for Highlanders' understatements.

## VI.    Conclusion

For the foregoing reasons, this Court **AFFIRMS** the Bankruptcy Court's allowance of the Binson deduction, **AFFIRMS** the Bankruptcy Court's allowance of the Industrial Development deduction, and **AFFIRMS** the Bankruptcy Court's reduction of the accuracy-related penalty.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

A TRUE COPY CERTIFIED ON
September 23, 2015
[Date]

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

By/_____ Deputy

ENTER:          September 30, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE